FOREMAN COMPANY ET AL. *v.* EDWARD WILLIAMS
[No. 17, October Term, 1936.]

*Decided November 12th, 1936.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, MITCHELL, and SHEHAN, JJ.

*Daniel E. Klein* and *Paul M. Higinbothom,* for the appellants.

*H. Beale Rollins* and *F. Gray Goudy,* for the appellee.

PARKE, J., delivered the opinion of the Court.

Edward Williams is a servant of the Mayor and City Council of Baltimore, a municipal corporation. He sustained an injury for which he was awarded compensation. The municipality brought an action at law against the Foreman Company, a corporation, and its servant, Michael Piccarella, for their negligence in causing the injury. The suit is in the name of the servant, and, under the provisions of the Workmen's Compensation Law, is for the reimbursement of the master and then for the use of the servant. Code, art. 101, sec. 58.

The municipality owned and operated an incinerator for the disposal of garbage, which was gathered in trucks and hauled by the Foreman Company to the incinerator, where it was emptied and burned. The plant was on the south side of the Philadelphia Road. The building in which the incinerator had been erected stood a short distance to the south of the road. The rectangle in front of the building is flat and open, and is bounded on the north by the Philadelphia Road and on the south and east and west by a concrete way, which is used by the trucks in the delivery of garbage and other refuse. The section of the way to the west extends south, along the west end of the building, a distance of seventy-five or one hundred feet, to a small building at the terminus of the way. The last-named structure is called a "tin press," and is used for the treatment of metal material which cannot be disposed of by the incinerator.

On the east of the eastern section of the concrete way are scales and a small building where the loaded trucks, which uniformly enter the premises from the Philadelphia

Road by the eastern section of the way, are first weighed, and then they proceed to the front of the building, which has three large metal, curtain, doors. In the west side of the building and near its front is a similar wide metal door. If the loaded truck is carrying light metal pieces, it is driven to the front of the building and turned so as to be in position to be backed through one of the three front doors. After the doorway is opened, the truck is backed into the building until its end is at the edge of a pit into which the load, after the light metal pieces have been put on the floor for removal, is dumped.

After the truck is emptied, it passes out to the Philadelphia Road by the western way. The pieces of metal are carried, dragged, or rolled away by workmen of the municipality, and put into the tin press at the southern end of the western way. Should the truck be loaded with heavy or bulky metal material, the truck enters the eastern way and is driven by the front of the building and northward, a short distance on the western way, sufficient for the truck to be stopped, and then, because the way is a *cul de sac* and there is not room to turn, is slowly backed south on the western way until the tin press is reached, where the metal stuff is to be removed.

The municipality had its complement of servants to operate the plant, and they, as well as the servants of the Foreman Company, who operated the trucks, were wholly familiar with the premises and the manner in which the trucks were to be managed and the work to be done.

The only error assigned is the refusal to take the case from the jury. The question of primary negligence on the part of servants of the Foreman Company in the infliction of the injury upon the plaintiff is conceded, and that of contributory negligence by the plaintiff is submitted to the jury for its finding. 5-6 *Huddy on Automobile Law*, sec. 23. The sole question on this appeal is whether there was error in refusing to withdraw the case from the jury, on the theory that as a matter of law the evidence established contributory negligence. There was conflict of testimony with reference to some of the

facts which entered into this problem. The jury, however, refused to believe the testimony on the part of the defendant that the side door on the west was open and that through it the defendant, without stopping or looking, dragged the tank, thrust himself suddenly before the truck, and was injured before his peril could have been discovered by the defendant's servants by the use of reasonable care and prudence. But there was other credible testimony, which, if believed, was in conflict with the defendant's conception of what happened. The question is whether this testimony, when given its most favorable construction for the plaintiff, is sufficient to bar a recovery by the plaintiff on the ground of his contributory negligence, if so believed by the jury.

There was testimony tending to show these facts. The accident happened shortly after noon on a bright day in September. The trucks of the defendant had been backed into the building, some metal pieces and two hot water boilers had been laid to one side on the cement floor, and the trucks had been then emptied of their contents. The side door in the front of the west side wall was closed, and the plaintiff and a fellow worker began to remove the metal pieces. Each dragged a boiler through the middle front door to the concrete way on the west. When the boilers were got clear of the west wall, the two men started to roll the boilers down the way to the building at the end of west way. His fellow worker kept well ahead of the plaintiff and had no mishap. The plaintiff had a piece of eight-inch galvanized pipe under his left arm as he rolled the empty thirty-gallon hot water tank by kicking it along. At the time he came out of the building he looked around and no truck was in sight. He testified that one had to notice whether there was a truck behind when a tank would be started to roll down the road to the tin press; and that, at that point, he did look back, and that he saw no truck. He then started to roll the tank by standing back of it in the concrete way and kicking it along. Instead of keeping in the way, the tank rolled to the west side of the road and caught in the dirt.

The plaintiff got the tank straightened out, and began again to kick it along, and the tank was kicked and rolled about fifteen or twenty feet to the plaintiff's left, against a pile of steel right-angle plates or shields along the west side of the main building, and there stuck, about thirty feet from the front line of the building. He worked the tank clear, and while trying to roll it again by kicking, he, without seeing or hearing the truck, was struck in the back and thrown to the ground with his hip under the left rear wheel.

The truck was twenty feet in length and its body was twelve feet high, which was four feet higher than the cab, and the truck was not equipped with a mirror to reflect the scene to the rear. It was impossible for the driver to see anything to the right or behind the truck, and it was the custom for his helper on the truck to watch and give warning to any one in the rear of the truck as it was backed. The driver drove the truck to the north on the west driveway about twenty-five feet; and then, reversing, drove his truck back until he struck the plaintiff, when the end of the truck was about thirty feet from the front line of the building, with his helper on the cab, and neither watch to the right having been kept for workmen on the driveway nor any warning having been given. The estimates of the speed with which the truck, with a capacity of two and one-half tons and a load of three tons, was driven backward varied from one to three miles an hour.

With his back towards the slowly approaching truck, and, with his mind and sight concentrated on kicking and disengaging a noisily rolling empty boiler over a concrete driveway, there was nothing to warn the plaintiff of the advance upon him of the truck, because no signal or warning of any kind was given. It is true that, if the plaintiff had looked back after the truck had been started in its backward drive, the plaintiff would have seen the truck in time to avert his peril, but the proof on his part is that he had no knowledge of the truck's approach, and he is not guilty of contributory negligence in not looking back

after starting to roll the tank down the incline of the west driveway, since he was under no duty so to do. The driveway was a private way which the municipality had provided for the use of its servants and those it had engaged to collect and deliver garbage and refuse matter to the plant for their incineration and disposal. The defendant contractor and its servants not only knew this way was used by the servants of the municipality for the purposes for which the plaintiff was employed at the time of the accident, but it was also the recognized duty of the servants of the contractor who were engaged in the operation of its trucks to warn the servants of the municipality of a truck's movement whenever it was driven backward on the west driveway to the tin press. Under these known circumstances, the plaintiff had a right to assume the performance of this duty, and that, since he had received no warning, he was not in any peril.

The truck had no superior right of way, and it should have been driven and controlled with reasonable care and diligence with respect to the plaintiff's safe user of the employer's right of way. Hence it was not negligence for the plaintiff to fail to anticipate the negligent act or omission of the operators of the defendant's truck. *Askin v. Moulton,* 149 Md. 140, 144, 131 A. 82; *Pennsylvania R. Co. v. Construction Co.,* 153 Md. 19, 23, 24, 137 A. 503; *Hilton Quarries, Inc., v. Hall,* 161 Md. 518, 531, 158 A. 19; *Distefano v. Universal Trucking Co.,* 116 Conn. 249, 164 A. 492; *Viretto v. Tricarico,* 116 Conn. 718, 165 A. 345; *Hirrel v. Lacey,* 274 Mass. 431, 174 N. E. 679, 680; *Roberts v. Freihofer Baking Co.,* 283 Pa. 573, 129 A. 574; *Riley v. Tsagarakis,* 50 R. I. 62, 145 A. 12; *Lozio v. Perrone,* 111 N. J. Law 549, 168 A. 764; *Nehring v. Stationery Co.* (Mo. App.), 191 S. W. 1054. Nor was the fact that the plaintiff did not look back while he rolled the tank down the west driveway conclusive evidence of contributory negligence on his part. *Mears v. McElfish,* 139 Md. 81, 84, 114 A. 701; *Hall v. Albertie,* 140 Md. 673, 680, 681, 118 A. 189; *Berry v. Irwin,* 220 Ky. 708, 295 S. W. 1020; *O'Donnell v. Lange,* 162 Mich. 654, 127 N. W. 691. See

1 *Blashfield, Automobile Law,* pp. 658-661, 654, 655; 5-6 *Huddy, Automobile Law* (9th Ed.), pp. 23, 24, 39-42. From the point where he had looked the second time to see if a truck were coming, and he had seen none, to where he was struck was, in a straight line, but approximately thirty feet. In this short space he was not walking with unrestricted freedom of observation and movement of a pedestrian, but as a workman who was doing a common task by the usual method at the particular place provided. His attention was necessarily concentrated on his labor. Obviously he could not efficiently do his work of rolling the tank forward if he were continually required to look backward. The effect of these facts, which were the known conditions of the plaintiff's service, is attempted to be nullified by the argument that the plaintiff, if he had looked when he came out of the front entrance of the building and a second time before he started down the west driveway, must have seen the truck both times. And, so, he either did not look or did look and saw the truck, and, accordingly, on either hypothesis, it is contended, that he was guilty of such contributory negligence as would bar a recovery. *Porter v. Quarry Co.,* 161 Md. 34, 37-39, 155 A. 428; *Lozzi v. Pennsylvania R. Co.,* 152 Md. 508, 510-512, 137 A. 293.

The distance is so short along the east driveway, and in front of the building, to where the truck stopped to back down the west driveway, that, although the speed at which the truck was driven before it stopped is unknown, the entire distance, including a stop at the scales, could have been quickly traveled. After the truck backed it went about fifty feet before the plaintiff was hit. Its speed for this distance was estimated to be from one to three miles an hour. Even at this minimum rate, it would take very little time for the truck to make fifty feet.

It follows that, while the time occupied by the truck in reaching the place of its stop on the west driveway is not ascertainable, yet it is known that the entire distance could have been traveled in a few minutes. Again, the time it took the plaintiff to reach the point where he was

hurt is unknown. It is, however, true that it consumed much more time than would ordinarily have been taken to roll by kicking a thirty-gallon hot water tank thirty feet, the distance from the front of the building to where the accident occurred. The tank first rolled to the extreme west edge of the concrete, where it was caught by the ground binding on the road, and there had to be worked free by the plaintiff, who straightened it out and then started to roll it again, but it diagonally crossed to the east side of the driveway and rolled into a pile of right-angled metal guards or shields, and, again the plaintiff had to release the tank, and, when he had got it out and in a position to roll, the accident took place. So the distance traveled was greater than thirty feet, and the length of time necessary both to roll the distance and twice to free the tank are unknown, but it is fair to say that an unusual length of time was taken, especially as the plaintiff was handicapped by the six inch pipe which he carried under his left arm. The time thus consumed furnishes an explanation why the truck had not reached where it could have been seen by plaintiff when he looked. This view is supported by attendant Francesco, who stated that he did not see the truck when he came out of the front door with the tank he rolled. In view of all these circumstances, the testimony of the plaintiff that he did not see the truck either time he looked is not inconsistent with the inferences that may be rationally drawn from the evidence. So, no matter how considered, the court cannot say as a matter of law that the evidence is sufficient to establish contributory negligence on the part of the plaintiff.

It follows that the court at *nisi prius* rightly held the question of contributory negligence was, on all the testimony, a question of fact for the determination of the jury. *Morgenstern v. Sheer*, 145 Md. 208, 217-219, 125 A. 790; *Askin v. Moulton*, 149 Md. 140, 131 A. 82; *Peters v. Schroeder*, 290 Pa. 217, 138 A. 755; *Caplan v. Reynolds*, 191 Iowa, 453, 182 N. W. 641.

*Judgment affirmed, with costs to the appellee.*