## EADES v. CAPITAL MATERIALS CO., Inc.

### No. 7587.

*United States Court of Appeals for the District of Columbia.*

April 7, 1941.

Leonard J. Ganse, of Washington, D. C. (Carl F. Bauersfeld, of Washington, D. C., on the brief), for appellants.

Edwin A. Swingle, of Washington, D. C. (Ernest A. Swingle, of Washington, D. C., on the brief), for appellees.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

VINSON, Associate Justice.

Maria Eades, widow of George Eades and the administratrix of his estate, brings this statutory action for negligence causing death. [1] The District Court directed a verdict for the defendants.

George Eades was employed by McCloskey and Company. [2] The Company contracted with the Federal Government to enlarge the Archives Building. There were several subcontractors. Among these was the defendant Capital Materials Company which furnished ready mixed concrete; the concrete was delivered in its mixers, attached to trucks. The trucks were owned by defendant Edward A. Hoffmeister. The driver of the truck operated the mixer. The truck-mixer which ran over and instantly killed George Eades was operated by Henry Lyle Johnson. [3]

The trucks were backed from the street running along the east side of the Archives lot, down a ramp, and through the basement to hoppers at the west side of the building. The trucks entered the basement through one of two holes in the east wall. Each hole was only a few inches wider than the truck and mixer. In the basement, the trucks travelled over one of two planked runways which ran from each hole in the east wall to a hopper at the west side of the building. Both runways were bordered by columns which gave more clearance than the holes in the wall but not much. Hence, the drivers of the trucks leaned out of the left side of the cabs, and looking back, operated the trucks so that the left side cleared slightly knowing that by so doing the right side would also clear. The drivers could see only to the left and to the left rear of the trucks.

George Eades was one of nine men handling wheelbarrows that McCloskey and Company had moving brick and tile from the basement to the upper floors. When one of these men, on his return trip, got off of the elevator with his empty wheelbarrow, he would proceed northward through a narrow passageway along the east wall of the basement. When he reached the southern runway, one of the two runways mentioned above, he turned left and continued westward for some distance on or by

---

[1] D.C.Code, Tit. 21, § 1 et seq.

[2] A compensation award has been made against McCloskey and Company for the benefit of George Eades' dependents, his widow and four children.

[3] Johnson is the defendant in one of the companion cases.

the runway before turning left again to the piles of brick and tile.

Just prior to the accident, Johnson was backing his truck down the ramp about three to five miles per hour, and had neared the hole in the basement wall that led to the southern runway. Meanwhile, Eades had come along the narrow passageway by the wall and had turned on to this runway, proceeding in the same direction as the truck. Eades took five or six steps on the runway, and then, the truck overtook him, crushing him beneath the right rear dual wheels.

The basement was fairly well lighted. The operation of an air compressor, a drill, and hoisting engines, however, made it very noisy.

We do not know if the ramp was perpendicular to the basement wall, nor what angle, if any, the southern runway described with an east-west line. It is not shown what chance a man pushing a wheelbarrow along the passageway had of seeing a truck on the ramp about to enter the basement; nor do we know whether a man proceeding by or on the runway could have kept clear of backing trucks. In short, we do not have a precise map of the area, nor definite information as to Eades' physical opportunity to be aware of and avoid the danger of the backing truck. We do know that Eades and Johnson were following the general routes that they had been instructed to take, and that the truck was on the ramp, a short distance behind Eades, when he turned left along or on the runway.

We do not know whether Eades looked. Johnson testified that he did not see or know that Eades was there, and that the first he knew of the accident was when he was waved to a stop after Eades had been killed.

No rules had been laid down, nor any customs developed in respect of an orderly handling of the basement traffic. Neither defendant had a man instructed to act as a lookout for the drivers or to warn any laborer in danger. An employee of McCloskey and Company did assist the drivers when requested, usually on their first trips; inferentially, this assistance was to prevent colliding with any obstacle on either side of the narrow runway. One of the subcontractors had a man stationed in the basement whenever their trucks used the runways; just what his duties were was not shown.

After the presentation of plaintiff's evidence on negligence, the Court directed a verdict for defendants. It is not certain whether the Court thought that plaintiff had not raised a jury question on defendants' negligence, or that plaintiff's contributory negligence was so clear that a directed verdict was called for. We believe that both the issue of negligence and of contributory negligence should have gone to the jury.

The testimony raises, in our opinion, the factual question of whether the defendants were negligent. Likewise, it is possible to infer from the testimony that Eades was negligent, but it is not a necessitated conclusion.

Moreover, since the testimony is not completely satisfying, more consideration should be given to the general circumstances surrounding the accident. The men with the wheelbarrows and some of the trucks used the same or very close paths. Heavy trucks with large mixers attached holding about $3\frac{1}{2}$ cubic yards of wet concrete were backing down a ramp, going through a narrow hole in the wall, crossing the entire length of the basement with the driver capable of seeing only to the left and left rear of the truck. The men, pushing wheelbarrows in front of them, were walking through a narrow passageway, turning on to a runway over which trucks came at a point where the trucks could not be seen until they were almost on top of them, and walking a considerable distance with their backs to the deadly moving machines. The basement was noisy. There was no one to direct traffic; no one, except by chance, to warn a man in danger. Under such circumstances the mythical prudent man, be he transmigrated into Eades, Johnson, Hoffmeister, or the Capital Materials Company, should be very careful indeed.

The cases cited by the plaintiff, for the most part, may be differentiated from the instant litigation either by way of the fact that the complainant was not laboring on the same general job as the defendant,[4] or upon the ground that the defendant's acts were not expected under the customary routine of the work.[5] None-

[4] Minsk v. Pitaro, 284 Mass. 109, 187 N.E. 224 [plaintiff was a child]; Eaton v. S. S. Pierce Co., 288 Mass. 323, 325, 192 N.E. 831 [plaintiff was a child]; Giannone v. Reale, 333 Pa. 21, 3 A.2d 331.

[5] Distefano v. Universal Trucking Company, 116 Conn. 249, 164 A. 492; Berry v. Irwin, 220 Ky. 708, 295 S.W. 1020.

theless, they teach a lesson applicable here. Driving, particularly backing, an automobile is fraught with danger. And here, where the driver's visibility was much less than normal, the task difficult, auditory warnings almost useless, and there was a likelihood of working men being in the path facing the other way, a greater danger existed. Whether Eades or the defendants exercised the proper care under these circumstances is a question for the jury.

Plaintiff's counsel complains that he was not allowed to build a record on issues other than defendants' negligence. That was unnecessary so long as the trial court ruled that there could be no liability because of lack of negligence on the defendants' part or that the plaintiff was chargeable with contributory negligence. Now, that these issues are to go to a jury, the plaintiff will be called upon to build a complete case including all questions of law that may arise as a result of the Compensation Act. [6]

Reversed.

[6] The Longshoremen's and Harbor Workers' Act, 33 U.S.C.A. § 901 et seq., has been made applicable to the District of Columbia as the general Workmen's Compensation Act, 45 Stat. 600, see second paragraph of first footnote in 33 U.S.C.A. § 901. McCloskey and Company comes under this Act and as was pointed out in footnote 2, they have been made liable on an award for the benefit of the dependents. This action is brought by the administratrix on behalf of all the next of kin, which includes besides the dependents four children over 18 years of age, against alleged negligent third parties. McCloskey and Company by the Act is subrogated to the rights of the dependents, 33 U.S.C.A. § 933(b), and hence has been joined as a use-plaintiff. The Ætna Casualty and Surety Company as the insurer of McCloskey and Company has made and will make the compensation payments. It too is joined as a use-plaintiff. On the state of this record, we do not discuss the many legal problems that may arise because of the relationship between, and the behavior of, the use-plaintiffs and the defendants.