No. 36,134

LILLIE MAY SMITH, *Appellee*, v. CECIL BASSETT, doing business as Bassett Brothers Construction Company, *Appellant*.

(152 P. 2d 794)

Opinion filed November 4, 1944.

*George B. Powers,* of Wichita, argued the cause, and *Robert C. Foulston, George Siefkin, Samuel E. Bartlett* and *C. H. Morris,* all of Wichita, were on the briefs for the appellant.

*Paul R. Kitch,* of Wichita, argued the cause, and *Howard T. Fleeson, Homer V. Gooing, Wayne Coulson, Manford Holly, John Madden, Sr.,* and *John Madden, Jr.,* all of Wichita, were on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action by a widow to recover damages for the wrongful death of her husband who was killed by a backing truck. Plaintiff prevailed and defendant appeals.

Appellant seeks a reversal of the judgment upon the grounds the trial court erred in overruling (1) his demurrer to appellee's evidence and (2) his motion for judgment on the evidence after both parties rested. Appellant's third contention is the verdict was excessive. The subjects will be treated in the order stated.

Was there sufficient evidence of appellant's negligence to require the submission of that issue to the jury? A determination of that question, of course, requires that we consider only evidence which proves, or tends to prove, appellant's negligence and that all reasonable inferences to be drawn therefrom be resolved in appellee's favor.

The appellant is Cecil Bassett who was doing business as the Bassett Brothers Construction Company. The Austin Company was engaged in the erection of an airplane plant for the Defense Corporation, the plant to be operated by the Boeing Airplane Company at Wichita. The Austin Company had employed appellant to deliver and dump sand into holes which had been made in the ground during excavation work. The excavation of dirt was made necessary in order to build a tunnel under a building. Appellant's truck was operated by one of his employees. Decedent was employed by the Austin Company on a different job in connection with the construction of the building. His work consisted in pulling nails and cleaning out lumber. He was working approximately 50 yards north of a building known as the assembly building. The tragedy occurred shortly after the regular working hours of decedent. He quit work at 4:30 p. m. Appellant's truck drivers were still operat-

ing. Decedent walked to an entrance on the north side of the assembly building and proceeded through a passageway between the assembly building and a storage room in order to check out at the office of the Austin Company which was located near the south part of the assembly building. Sand was being dumped in this passageway by appellant's truck drivers. This passageway was approximately eighteen to twenty feet wide. To the west of the passageway was a warehouse and to the east of the passageway was a huge assembly room. To the east of the passageway were steel piers which rested on the west edge of a concrete slab covering a tunnel which ran the full length of the assembly building north and south. The latter building was approximately 1,300 feet long north and south and 1,100 feet wide. It was in connection with the construction of the tunnel that deep excavations were made in this passageway. Appellant started to fill in the excavations July 10, 1941. It appears appellant worked somewhat intermittently on the filling of the holes in the passageway and that he also hauled sand to other places in the building. The accident in the passageway occurred March 13, 1942, on the morning of which day the dumping of sand had again been resumed. The day of the accident was the first day trucks had dumped sand into the passageway for a period of about a week. The holes which were being filled ranged from a few feet to twenty feet in depth. The trucks backed into the passageway from the north on planks and dumped the sand into the holes. As the passageway was being filled additional planks were laid on the sand to the south. Two planks were laid together for each dual truck wheel. The planks for each wheel were three inches thick and fourteen inches wide. The dual wheels of appellant's trucks were approximately twenty-two inches wide. The passageway was also used by workmen going from one end of the building to the other. Planks had been laid across big holes in the walkway. This passageway was commonly used as a walkway by the employees of the Austin Company. The men used the truck tracks for seven weeks and they were so used by employees during the seven-day period immediately preceding the accident.

There was a space of approximately 8 feet between the west plank and the east wall of the warehouse and a space not quite so wide between the east plank and the steel girders. There were three other possible routes which workmen might use in walking from the north end to the south end of the building and vice versa. One route was on the sand on either side of the planks but the sand was soft and

there was a considerable quantity of building material at places along the sides of the planking which made that route difficult. The second route was by way of the underground tunnel. The tunnel had not been entirely completed and that passageway seemed not to be available on the day in question as there was water in it and work was being done in the tunnel. The third route was on top of the concrete slab which covered the tunnel but that passageway was just inside of the assembly room where considerable heavy overhead work was being done. Workmen frequently dropped heavy tools, there was steel flying, and that route was dangerous. On the day in question the passageway where the sand was being dumped was the only route which the workmen could use.

Appellant's sand-dumping trucks pulled up to within a short distance from the place where decedent was working and then backed south to the entrance into the passageway. Each truck would wait at the entrance until the truck in the passageway had pulled out. There was a continuous stream of trucks operating in the passageway on the day in question. Decedent had been working for the Austin Company about sixty days. While backing in a southerly direction over the planks in the passageway the truck driver kept the left door of the truck open in order to make certain that the west wheels stayed on the planks. Appellant had no one on the back of the truck or elsewhere to warn workmen of an oncoming truck. The truck in question was backing at a gait about twice as fast as a man would ordinarily walk. The truck in question had backed on the planks a distance of approximately 150 to 200 feet when the accident occurred. Decedent was walking south on the east plank while the driver of the truck was watching the west plank. There were twenty rivet drivers at work. They were making a great deal of noise. Decedent's eyesight and hearing were good. Someone hollered just before the accident but the truck backed over decedent. He was killed instantly. It appears neither the truck driver nor decedent heard the warning or that neither of them heard it in time to avoid the accident.

There were fifteen men working in the same crew with decedent. Eleven of them were walking south on the planks in the passageway at the time decedent was killed. Ten of them were on the planks approximately fifty yards farther south. There was testimony of a steel worker who had been on duty for only an hour. He testified that the truck which backed over the decedent was the only truck in the passageway he had observed while he was there.

Appellant argues decedent was a mere licensee on the premises and therefore appellant is immune from liability except in cases of willful and wanton injury. In support of that doctrine he cites *Toomey v. Wichison Industrial Gas Co.*, 144 Kan. 534, 61 P. 2d 891, and licensee cases from other jurisdictions. Assuming, without deciding, the doctrine is applicable to the facts in the instant case appellant is not entitled to invoke it now. The record does not disclose the contention was made during the trial. Furthermore the record affirmatively discloses the trial court did not instruct the jury upon that theory but, on the contrary, instructed it upon the doctrine of reasonable care and diligence as to both parties. The record reflects no objections to the instructions as given and none is made now. The instructions became the law of the case and the complaint is not available on appeal. (*State v. Myers*, 152 Kan. 56, 59, 102 P. 2d 1023; *Haney v. Canfield*, 152 Kan. 597, 600, 106 P. 2d 662.)

Appellant insists that since the accident occurred on private property the case is not governed by the general rules pertaining to traffic on public roads. Clearly statutes relating specifically and solely to the operation of vehicles on public highways do not pertain to the operation of vehicles on private property. It does not follow, however, that operators of motor vehicles on private property are not held to the exercise of reasonable care and diligence with respect to the safety of others who reasonably may be expected to use a driveway on the premises. Appellant's truck drivers had been dumping sand in this passageway much of the time, although not continually, since July 10, 1941. The accident occurred on March 13, 1942. There was evidence the truck tracks had been used commonly by employees over a period of seven weeks and also that they were so used during the week immediately preceding the accident. This was the first day within a week that trucks had dumped sand in the passageway. Ten other workmen in decedent's crew were quitting work at the end of the day. They were on the way to the office of the Austin Company to check out. They also were walking on the truck tracks at the very time this accident occurred. The truck driver's eyes were fastened upon the west plank which he was watching as he backed his truck. In that position he could not see the east plank at all. Appellant had no one stationed at the rear of the truck or elsewhere to warn the truck driver of persons who might be using the planks as a walkway. Whether under all the circumstances appellant and his truck driver in the exercise of reasonable

care should have anticipated the presence of employees who might be walking on the planks was a question of fact to be determined by the jury. Assuming they reasonably should have anticipated the presence of workmen at the time they were quitting work it became the province of the jury to also determine whether appellant and his truck driver exercised reasonable precaution in order to avoid injury.

Appellant asserts decedent was guilty of contributory negligence as a matter of law. At the close of appellee's evidence judgment was not requested upon that evidence for the reason it disclosed decedent's contributory negligence but it was sought only upon the ground that evidence was not sufficient to justify relief against appellant. That motion for judgment was treated as a demurrer and was properly overruled. Appellant introduced his evidence and moved for a directed verdict for the reason that under all of the evidence appellee was not entitled to recover.

Appellee states appellant made no contention during the trial or on the post-trial motions that decedent was guilty of contributory negligence which barred recovery as a matter of law. While the above statement by appellee is not denied we prefer in this case to treat the question of contributory negligence under appellant's motion for a directed verdict. We need not, however, again review appellee's evidence previously narrated at considerable length. We think the testimony considered as a whole did not establish appellee's contributory negligence as a matter of law. All of the evidence, when considered in the light most favorable to appellee, presented a situation where reasonable minds might differ as to whether decedent exercised reasonable care for his own protection. Under such circumstances it was the province of the jury to determine the question of decedent's contributory negligence (*Meneley v. Montgomery*, 145 Kan. 109, 112, 64 P. 2d 550, and cases therein cited) and the court so instructed the jury.

Appellant relies upon *Bessette v. Ernsting*, 155 Kan. 540, 127 P. 2d 438; *Hendren v. Snyder*, 143 Kan. 34, 53 P. 2d 472; *Crowder v. Williams*, 116 Kan. 241, 226 Pac. 784, and some decisions from other jurisdictions. In the Bessette case plaintiff's evidence disclosed defendant had no reason to anticipate plaintiff's presence in the immediate vicinity of the accident. In the Hendren case plaintiff's evidence failed to disclose just how the accident, in fact, occurred. We there applied the familiar doctrine that negligence is never pre-

sumed but must be established by proof. In the instant case it is clear how the accident occurred. In the Crowder case plaintiff's contributory negligence was clearly established by her own testimony. It disclosed that without regard to her own safety she stepped out from behind a parked car on the side of a city street and hurried diagonally across it at a point other than an intersection without one precautionary glance in the direction from which an automobile might be approaching.

We have examined the various cases from other jurisdictions which counsel for appellant with their customary industry have presented. We do not deem it necessary to analyze the cases separately. In the final analysis the question is a factual one as to whether under the particular circumstances appellant or his truck driver in the exercise of ordinary care should have anticipated the presence of workmen at the time in question and whether they exercised reasonable care to avoid injury. It is also a factual question whether decedent should have anticipated a backing truck at the particular time and whether under the facts disclosed he was guilty of contributory negligence in not leaving the planks in time. Here decedent, of course, did not testify. Ordinarily the presumption is that a person with love of life, common to all, exercises such due care as the circumstances permit to protect himself from injury. (*Eidson v. Railway Co.*, 85 Kan. 329, 116 Pac. 485; *Sams v. Commercial Standard Ins. Co.*, 157 Kan. 278, 284, 139 P. 2d 859.) In view of this presumption and the lack of evidence to clearly overcome it as a matter of law we think the motion for a directed verdict was properly overruled.

A few instructive cases pertaining to the subject of care required by parties in cases involving the backing of vehicles on private property are *Patterson v. Edgerton Sand & Gravel Co.*, 227 Wis. 11, 277 N. W. 636; *Foreman Co. v. Williams*, 171 Md. 55, 188 Atl. 25; *Powell v. Brosnahan, et al.*, 232 Mo. App. 1161, 115 S. W. 2d 140; *Yamauchi v. O'Neill*, 38 Cal. App. 2d 703, 102 P. 2d 365; *Gorzeman v. Artz*, 13 Cal. App. 2d 660, 57 P. 2d 550; *Eades v. Capital Materials Co.*, 121 F. 2d 72; *Eaton v. S. S. Pierce Co.*, 288 Mass. 323, 192 N. E. 831.

The amount of the verdict was $6,500. Appellant says it is excessive. Decedent was sixty years of age at the time of his death. His expectancy according to the American Experience Table was 13.47 years. He was strong, healthy and a good workman. He had

been employed on his present job for a period of sixty days. His work was pulling nails and sorting lumber. His weekly pay during that time was $25.54. Decedent and appellee moved to Wichita from Caney November 1, 1941. They have three daughters who are married. Appellee was decedent's only dependent. Decedent was a boilermaker by trade. Prior to coming to Wichita he did not have steady employment for seven or eight years, but he owned his home and except for some help from a daughter who was living with them he made a living for himself and family. During that seven- or eight-year period they would not have gotten along without the daughter's help. The exact amount of the daughter's help is not shown. During that period decedent did odd work, small carpenter jobs and other work of a similar character. Prior to the depression decedent had steady employment but the exact amount of his yearly income is not disclosed. He never paid an income tax. His funeral bills were $433.20 to the undertaker, $42 to the cemetery association, and $10 to the minister.

It is well-settled doctrine that the amount of recovery in cases of this character is limited to the financial loss sustained by the plaintiff. (*Pattrick v. Riggs,* 148 Kan. 741, 84 P. 2d 840.) It was well said in the early case of *Union Pacific Rly. Co. v. Milliken,* 8 Kan. 647, that, "No verdict is right which more than compensates; none which fails to compensate." The difficulty encountered in fixing such compensation is not with this recognized principle, but with its application to varying facts and circumstances.

On the basis of $25.54 per week decedent if regularly employed during his entire life expectancy would have earned the sum of $17,-889.23. At his age it, of course, would be speculative and conjectural to assume decedent's health and vigor would continue unabated during the remainder of his life. Expectancy tables are merely one of the various aids employed in the judicial process of arriving at fair compensation. See *Young v. Kansas City Public Service Co.,* 156 Kan. 624, 135 P. 2d 551, in which the various guides for measurement of compensation are discussed at length and numerous cases upon the subject are collated. We do not deem it necessary to repeat what so recently was said in that case or in other cases upon the subject. The jury in the instant case did not allow compensation at decedent's present basis of pay for the entire period of expectancy. When total funeral expenses are deducted from the $6,500 verdict the next balance is approximately one-third of what the verdict

would have been if calculated on the basis of present pay for the full duration of decedent's expectancy. While $6,500 is a fairly generous verdict under the evidence in this case it is not sufficiently excessive, if actually excessive, to shock the conscience of the court. While the factual situation was not entirely the same in *Pattrick v. Riggs*, supra, we think the decision in that case is helpful. There decedent's earning capacity at the age of seventy-seven was $24.60 a week and we permitted a recovery of $4,650.

We think the judgment should be affirmed. It is so ordered.