No. 41,189

Dearborn Motors Credit Corporation, *Appellee*, v. A. S. Neel, *Appellant*, and W. P. Astle, *Appellee*.

(337 P. 2d 992)

Opinion filed April 11, 1959.

*Archie T. MacDonald*, of McPherson, argued the cause, and *Russ B. Anderson*, also of McPherson, was with him on the briefs for appellant.

*Roy L. Rogers*, of Wichita, argued the cause, and *H. E. Pat Healy*, also of Wichita, was with him on the briefs for appellee, Dearborn Motors Credit Corporation.

*Kenneth G. Speir*, of Newton, argued the cause, and *Vernon A. Stroberg*, *Herbert H. Sizemore* and *Richard R. Hrdlicka*, all of Newton, were with him on the briefs for appellee, W. P. Astle.

The opinion of the court was delivered by

SCHROEDER, J.: This action appearing for the second time (See *Dearborn Motors Credit Corporation v. Neel,* 181 Kan. 598, 313 P. 2d 243) involves the sale of a Ford diesel tractor. The plaintiff seeks recovery of the balance of the purchase price due and the purchaser cross-petitions for damages on the ground of fraud, among others.

Stripped of complicated facts the question presented on appeal is whether issuable facts were presented to the trial court by the pleadings of the respective parties.

Featured in the pleadings are two written instruments. The first in point of time, to give the facts chronologically, is a retail purchase order wherein A. S. Neel (defendant-appellant) on January 4, 1954, entered his order for the following:

| | | |
|---|---|---|
| "Diesel tractor 11 x 38 tires..... ............. .... . | | $3050.00 |
| Ford 6 and 3-14 Plow................ $1450/00 | | |
| Over allowance ..................... 300/00 | | 2750.00 |
| | | 1150.00 |
| | | |
| | | 1600.00 |
| "Contract to be made March 2nd 1954. 6 and Plow to be picked up and loaner tractor to be furnished to A. S. Neel. Diesel to be delivered after we have completed demonstrating. | | |
| Taxes .......................................... | | 32.00 |
| Total Amount of Order........................ | | 1632.00" |

A down payment of $32 was made leaving a balance of $1,600 payable March 2, 1955, and March 2, 1956. The order was signed by A. S. Neel and accepted by W. P. Astle (defendant-appellee), the implement dealer from whom the purchase was made. A salesman by the name of P. A. Larson made the sale of the Ford diesel tractor in question. On the left lower corner is written in Astle's handwriting: "Preston—This deal is OK provided you can get at least 900/00 cash, Buck." ("Preston" refers to P. A. Larson and "Buck" is W. P. Astle.)

A specific recital on the lower left-hand corner of the order reads: "This order when accepted shall be subject to conditions and applicable warranties printed on reverse side." Among the conditions on the reverse side is No. 7: "Purchaser acknowledges that no warranties or representations, either express or implied have

been made to him with reference to the new items, if any, hereby ordered, except as hereinafter set forth, . . ." Below the numerated conditions is a *new tractor warranty.*

Thereafter on the 12th day of March, 1954, a written purchase agreement was executed on a form captioned "DEARBORN MOTORS CREDIT CORPORATION." The seller was indicated as "Astle Tractor, McPherson," and the customer's name as "A. S. Neal, Windom, Kansas.". The agreement recites:

"Above seller hereby sells, and undersigned buyer hereby purchases on the terms and conditions set forth below AND ON THE REVERSE HEREOF, the following personal property in its present condition, delivery and acceptance of which buyer hereby acknowledges:"

The make and type is described in the purchase agreement as a *new Fordson, model FMD 11.* It lists the cash sales price as $3,050 and the sales tax as $32. It further indicated a documentary charge of $2.00 and an investigation fee of $2.00, for a total of $3,086 less trade-in of $1,450 for a balance of $1,636 *unpaid cash balance.* Further written therein, the buyer promised to pay to the order of seller the *deferred time balance* of $1,959.90 to be paid in three equal annual installments of $653.30 each beginning December 12, 1954. The agreement recited delivery of the property on March 12, 1954. It was signed by A. S. Neel and accepted by the signature of P. A. Larson on a signature line calling for the signature of "Dealer Owner, Partner, or Officer." On the reverse side of the purchase agreement W. P. Astle, owner of Astle Tractor, by his signature assigned the contract to Dearborn Motors Credit Corporation (plaintiff-appellee), hereafter referred to as Dearborn. Also on the reverse side of the purchase agreement the following pertinent recitals were made:

■ "It is understood and agreed that this contract and seller's interest herein will be offered to Dearborn Motors Credit Corporation for discount. All payments by the buyer are to be made to the office of Dearborn Motors Credit Corporation.

■ "Buyer agrees and represents that buyer will not assert any claim or defense which buyer might have against seller in any action by or against Dearborn Motors Credit Corporation to obtain or retain possession of the property or for any unpaid balance hereunder, or otherwise."

It is further recited that *the purchase agreement constitutes the entire contract between the parties* and that:

■ ". . . No warranties, express or implied, and no representations, promises or statements have been made by seller unless endorsed hereon in writing . . ."

Astle assigned the contract at a discount to Dearborn, and upon Neel's default in payment Dearborn commenced the present action by filing its verified petition against Neel to recover the total of the deferred time balance of $1,959.90 then due and unpaid by reason of an acceleration clause.

Dearborn's petition, among other things, alleged that it was a *bona fide* holder in due course of said purchase agreement and note and set up the purchase agreement as an exhibit which was incorporated by reference.

Astle was made an additional party defendant in the trial court on March 5, 1956, and entered his appearance.

Neel in his verified answer and cross petition against Dearborn and Astle *admitted execution and delivery to Astle of the purchase agreement* and that Dearborn was the owner of said purchase agreement by assignment or transfer from Astle. In his answer Neel alleged the difference between the cash balance and the deferred time balance of $323.90 was in excess of 10% per annum and usurious in the amount of $34.30. Neel specifically denied that Dearborn was a *bona fide* holder in due course of the purchase agreement.

In his cross petition Neel alleged that the tractor described in the purchase agreement was represented by Astle and his salesman to be a *new Ford diesel tractor;* that such representation was false and knowingly and fraudulently made by Astle and his salesman for the purpose of defrauding and inducing Neel to purchase said tractor, and that he relied upon the representation; that Dearborn "knew or should have known of such representation and its falsity and as assignee of the purchase agreement attached to plaintiff's petition, is charged with knowledge thereof"; that in fact the tractor was not new, but had been used by Astle as a demonstrator on several plowing demonstrations prior to its being sold to Neel; that various mechanical defects developed and that the tractor failed to operate properly as a new tractor in that it bent its push-rods and got out of time; that it did not develop adequate speed in plowing and farming work; that the fuel injection system did not operate properly and the motor used excessive oil; that Astle and his salesman further represented to Neel that the Ford diesel tractor would be equipped with brackets and attachments so that Neel could use and operate his post-hole driller, blade and mower then owned by him; that said representations were falsely and fraudently made to induce him to purchase the tractor and he relied upon such representa-

tions; that said representations were false in that Astle did not furnish said brackets and attachments at any time, and for the reason that in truth and fact no such brackets and attachments were being manufactured for said diesel tractor, and for the further reason that it did not come equipped with them. By reason of this failure Neel was required to pay the sum of $150 for the drilling and digging of post holes for fence on his farm in the year 1955, and sustained damages in said amount. Neel further alleged that by reason of the foregoing facts the tractor did not exceed in value the sum of $300 and he has been damaged in the amount of $2,786. The prayer was for judgment against Dearborn and Astle in the total sum of $3,004.60.

Astle demurred to the amended answer and cross petition of Neel. This was overruled by the trial court.

Astle in his answer to the cross petition of Neel expressly denied the fraud alleged; denied Neel's allegation that the tractor failed to operate properly, and that if Neel had difficulty with the tractor it was by reason of his own faults and efforts that it did not operate properly. Astle further alleged that Neel knew of all the circumstances surrounding the diesel tractor and specifically knew, understood and agreed that said tractor had been used by Astle for demonstration purposes to and including March 2, 1954; that the purchase order attached and made a part of the answer by reference specifically contained permission to use said tractor during such time as a demonstrator "and also contained an agreement that no representations or promises had been made by Astle, or any of his representatives, to the said A. S. Neel other than contained on the face of said purchase order." Astle further alleged in his answer that he and his representatives co-operated with Neel out of all proportion in an effort to satisfy Neel with the tractor but that Neel refused and did not intend to be satisfied with it. He further alleged the tractor was sold to Neel fairly and honestly and that in truth and in fact a discount on the purchase price was given to Neel in consideration of his permitting Astle to demonstrate the same to March 2, 1954. His prayer was that Neel take nothing by his cross petition.

The day following Astle's answer, Neel moved for judgment on the pleadings against Dearborn because it had not answered. The trial court entered judgment against Dearborn in the amount of $1,044.70 for the alleged fraud and misrepresentation, which judgment the trial court later set aside. This ruling of the trial court was affirmed in *Dearborn Motors Credit Corporation v. Neel,* supra.

Following return of the case to the trial court, Dearborn demurred to the cross petition of Neel. This demurrer was sustained by the trial court insofar as said cross petition claimed any affirmative relief against Dearborn above the amount of its claim, and over-ruled as to the remainder of Neel's cross petition. No appeal has been taken from this order.

Dearborn replied to the answer of Neel denying each and every material allegation contained therein which conflicts with, contra-dicts or is inconsistent with the allegations of the petition, and denied that any misrepresentations were made by Astle.

Neel replied to the answer of Astle denying specifically all of the allegations in the answer which are inconsistent or adverse to the cross petition. Neel specifically denied he knew that said tractor had been used as a demonstrator prior to its delivery to him under the sales agreement made and entered on March 12, 1954; denied that he gave Astle or his agents permission to use said tractor as a demonstrator up to March 2, 1954; denied that any discount was given in consideration of any alleged permission to Astle or his agents to use said tractor as a demonstrator. Neel specifically alleged that the retail purchase order attached to Astle's answer was no part of the purchase agreement attached to Dearborn's petition under which and by the terms of which the tractor was purchased.

Following these pleadings Dearborn moved for judgment on the pleadings against Neel for the reason that Neel elected to ratify the contract held by Dearborn and to counterclaim against Astle for fraud and misrepresentation and seek damages therefor, rather than to rescind the contract. The trial court overruled this motion.

The abstract recites that counsel for Dearborn conceded Dearborn was not a holder in due course of the purchase agreement. While this point is made an issue in the pleadings, the statement is not refuted in the counter abstract. It, therefore, must be accepted as having been conceded. The purchase agreement provided for the retention of title to the tractor by the seller and was not a negotiable instrument. (*General Motors Acceptance Corp. v. Davis,* 169 Kan. 220, 218 P. 2d 181.) Neel's defense and cross petition was thus good against Dearborn to the extent of Dearborn's claim. As assignee of Astle it took the instrument subject to all defenses. (*Refining Co. v. Oil Co.,* 104 Kan. 719, 180 Pac. 807.)

After the opening statement of Neel at the trial of the action counsel for Neel stated:

"Now, you will perhaps wonder why Mr. Neel as defendant in this case is going ahead with the evidence. We admit making this contract—the execution of the contract. We deny that Dearborn is a holder in due course, and our position simply is that Dearborn, too, is charged with the—

. . . . . . . . . . . . .

"We will proceed to show in support of the defendant's case what the various elements—the representations made by Mr. Larson were to Mr. Neel, and we believe that you will decide after hearing this evidence that the defendant Neel is entitled to a judgment offsetting the claim of Dearborn and for any balance above that offset against the defendant Astle."

Neel made his pleadings part of his opening statement and appellees' motion for judgment on the pleadings and opening statement of Neel was overruled.

Neel was called as a witness to testify on direct examination. He testified that he talked with Larson about trading his Ford 6 tractor for a Ford diesel tractor. Questions and answers relative to adapters for the diesel tractor were excluded. Counsel for Astle then asked Neel a few preliminary questions. In this interrogation Neel admitted signing the purchase order in the presence of Larson, but that Astle was not present and Neel had not discussed the trade with Astle. Thereupon the purchase order was introduced in evidence. Appellees then *renewed their motion* for judgment. Following argument thereon the trial court stated:

". . . The correct ruling on this matter is to sustain judgment on the pleadings . . ."

The jury was then excused by the court *without an opportunity for Neel to complete his direct examination and evidence.*

The journal entry of judgment entered by the trial court pursuant to the foregoing ruling recites:

"Thereupon, the defendant, A. S. Neel, having plead avoidance, makes an opening statement in support of his answer and cross petition and offers the testimony of the defendant, A. S. Neel; and, after hearing the testimony and statements of the said defendant, A. S. Neel, the plaintiff objected to the introduction of testimony regarding any representations not made in the presence of the defendant, W. P. Astle, assignee [assignor] of the plaintiff and *renewed its motion for judgment;* and, the defendant, W. P. Astle, also objects to such testimony and moves the court for judgment; and,

"After hearing statements and arguments of counsel and after having examined the files, the exhibits and the admissions and testimony of defendant, A. S. Neel, the Court being well and sufficiently advised, finds that the motion of the plaintiff for judgment should be sustained and that the motion of the defendant, W. P. Astle, for judgment should be sustained." (Emphasis added.)

Judgment was entered for Dearborn against Neel in the sum

of $2,580.54 and costs with interest at 10% per annum, and judgment was entered for costs in favor of Astle.

A motion for a new trial on statutory grounds was filed in time and overruled. Neel duly perfected an appeal from orders sustaining the motions of Dearborn and Astle for judgment, and overruling the motion for a new trial, and the judgment entered.

Generally this court does not go beyond the recitals in a journal entry of judgment to determine what judgment the trial court entered. Here, however, the journal entry is ambiguous in that it recites that Dearborn *renewed* its motion for judgment and Astle objecting to the testimony moved the court for judgment. The only motion which could have been renewed was the prior motion for judgment on the pleadings and opening statement of Neel by the appellees, Dearborn and Astle. This is consistent with the trial court's announcement of its ruling which indicates that judgment was entered on the pleadings. We construe the judgment as having been entered on the pleadings and opening statement of counsel.

A motion for judgment on the pleadings invokes the judgment of the trial court on questions of law as applied to the well-pleaded and conceded facts. It presupposes a lack of issue of fact. If there is no issue of material fact presented by the pleadings, then it becomes a question of law as to which party is entitled to judgment. But if a material issue of fact is presented and remains undetermined, a judgment on the pleadings is improper. It has been said that a motion for judgment on the pleadings is equivalent to a demurrer in that it admits the truth of all well-pleaded facts in the pleadings of the opposing party. The court in ruling such a motion or demurrer is not justified in reaching out and making additional facts a part of the pleadings to which a motion or demurrer is lodged, and for such determination the pleadings of the moving party are to be ignored. (*Hirt v. Bucklin State Bank*, 153 Kan. 194, 109 P. 2d 171; *Buechner v. Trude*, 175 Kan. 572, 266 P. 2d 267; *Whitaker v. Douglas*, 177 Kan. 154, 277 P. 2d 641; *Geier v. Eagle-Cherokee Coal Mining Co.*, 181 Kan. 567, 313 P. 2d 731; and authorities cited in these opinions.)

Appellees in the instant case, to be entitled to a judgment on the pleadings, must mesh their case into another set of rules governing the interpretation or construction of a written contract to circumvent the necessity of receiving evidence. These rules are well summarized in *Oliver v. Nugen*, 180 Kan. 823, 308 P. 2d 132, where the court said:

"The doctrine has been well established and frequently applied that where parties have carried on negotiations, and have subsequently entered into an agreement in writing with respect to the subject matter covered by such negotiations, the written agreement constitutes the contract between them and determines their rights. . . .

"It is a judicial function to interpret a written contract which is free from ambiguity and does not require oral testimony to determine its meaning. Ambiguity in a written instrument does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning . . . If a written contract is actually ambiguous concerning a specific matter in the agreement, facts and circumstances existing prior to and contemporaneously with its execution are competent to clarify the intent and purpose of the contract in that regard but not for the purpose of varying and nullifying its clear and positive provisions. . . ." (pp. 827, 828.)

See also *Custom Built Homes Co. v. State Comm. of Rev. & Taxation*, 184 Kan. 31, 37, 334 P. 2d 808.

In hearing a motion for judgment on the pleadings which brings into focus the *interpretation* of a written contract, no evidence is admissible. (*Hutchinson Municipal Airport Cases*, 161 Kan. 502, 169 P. 2d 615.)

In the instant case appellees in their briefs would have us consider as a part of the pleadings to which the motion for judgment was lodged the new matter set up in Astle's answer, which was denied by Neel's reply, and certain admissions made by Neel in open court and included in the journal entry sustaining the motion for judgment. We know of no statute or decision of this court, and none has been cited permitting us to do so. (*Whitaker v. Douglas*, supra.)

For purposes of a motion for judgment on the pleadings and *on the opening statement* of Neel, the allegations of the answer, the cross petition and the reply of Neel must be taken as true, and the denials and defenses alleged in the answers of Dearborn and Astle must be disregarded. The motion should not be allowed unless the pleadings of Neel do not state a cause of action, or as part of the opening statement there are statements of fact or admissions which preclude a recovery by Neel and compel a judgment for Dearborn and Astle. (*Stromquist v. Nelson*, 159 Kan. 716, 158 P. 2d 458.)

The opening statement of Neel in the instant case consisted principally of a recital of the issues and it incorporated his pleadings therein. For a recent case discussing in some detail the mo-

tion for a judgment on the pleadings and opening statement of counsel, see *Sherman v. Smika,* 184 Kan. 83, 334 P. 2d 330.

Applying the foregoing law to the pleadings and opening statement of Neel in the instant case, the trial court's order sustaining the motion for judgment on the pleadings and the opening statement of Neel was clearly erroneous.

For purposes of ruling the motion for judgment on pleadings, the only written instrument entitled to consideration was the purchase agreement. It specifically represented the Ford diesel tractor as a *new Fordson* on the face of the instrument and Neel had the right, insofar as the pleadings are concerned, to rely on the tractor as "new" in the ordinary sense of the meaning of that word as distinguished from "used." Neel alleged fraud on the part of Astle in misrepresenting the tractor as new when in fact it had been used as a demonstrator prior to its delivery to Neel. It is fraud to represent used articles as new in order to induce a sale. *(Thompson v. Howard Motors Co.,* 122 Kan. 339, 252 Pac. 468; and *Martin v. Hughes,* 156 Kan. 175, 131 P. 2d 682.)

The issue ultimately framed by the pleadings on this point did not concern whether the tractor was new, but whether or not Neel knew and bargained for the tractor as a demonstrator. Neel specifically denied in his reply to the answer of Astle that he knew the Ford diesel tractor had been used as a demonstrator prior to its delivery to him under the sales agreement made and entered into March 12, 1954. With this issue framed by the pleadings, clearly neither Astle nor Dearborn was entitled to a judgment on the pleadings and the opening statement being consistent with the pleadings did not alter the situation.

In fact, counsel for Dearborn admit the procedure pursued by the court was unusual, but submit that the order sustaining the motion for judgment was tantamount to an order directing a verdict, or giving judgment on the pleadings, opening statement and admissions of Neel. They rely on the proposition that where the pleadings, statements of counsel and admissions of the parties permit only one conclusion, a trial court must sustain a motion for judgment or direct a verdict accordingly. (Citing 53 Am. Jur., Trial, § 372, p. 302; and *Shaw v. Welch,* 136 Kan. 736, 18 P. 2d 189.)

Assuming the ruling of the trial court was equivalent to sustaining a motion for a directed verdict, as appellees contend, the conclusion of the trial court was still erroneous. Appellees contend:

(a) That the misrepresentation of the tractor as new was not binding on Astle, for the reason that Larson, the salesman, and not Astle signed the purchase agreement;

(b) That the written words on the purchase order show that Neel knew the tractor was a demonstrator and was not new; and

(c) That the trial court should take judicial notice that a demonstrator is ordinarily sold as new rather than used.

Under (a) above it is argued that an issue based upon alleged "fraud or misrepresentations" is foreclosed by the decision in *Holland Furnace Co. v. Williams*, 179 Kan. 321, 295 P. 2d 672. There a contract specified that it contained the entire agreement between the parties and that verbal understandings and agreements with representatives would not bind the seller unless set forth in the contract. In an action for the purchase price the buyer set up as a defense fraudulent representations of the seller's agent as to the condition of the buyer's old burner alleged to have been made before the contract was entered into. The court held a motion for judgment on the pleadings was correctly sustained in that no defense was stated, on the ground the contract taken by a salesman to be forwarded to the principal for acceptance did not bind the principal to any representations not appearing on the face of the conditional sales contract. Clearly, the *Holland Furnace Co.* case does not control this decision. Here the alleged false representation, despite similarities of the contracts, appeared *on the face of the purchase agreement*—that the tractor was *new*.

Fairly construed, the pleadings of Neel allege an agency relationship between Larson and Astle and the purchase agreement (admitted by Neel) supplies substantial evidence of this fact. The name of Astle Tractor appears on the front of the purchase agreement as dealer and it also shows that Astle took in the Ford tractor and plow on trade-in at $1,450. Larson approved the agreement as "Dealer Owner, Partner, or Officer." Astle's ownership of the agreement is conclusively shown by his assignment of it to Dearborn. The representation of the tractor as new plainly appears on the instrument and Astle cannot exercise rights of ownership of it, and at the same time deny that he is bound by the representation that the tractor was new. Even if Larson had no authority to bind Astle to the representation that the tractor was new, Astle by retaining the benefits of the contract is charged with the knowledge of it, and is presumed to have affirmed and ratified the contract, and is estopped to deny the agency. (*Thresher Co. v. Zimmerman*, 109

Kan. 159, 197 Pac. 1111; *Isaacs v. Motor Co.*, 108 Kan. 17, 193 Pac. 1081; *White Sewing Machine Co. v. Edwards*, 120 Kan. 151, 242 Pac. 129; and 1 Mechem on Agency [2nd Ed.], § 410, p. 301.)

Going beyond the pleadings of Neel to the evidence, it was disclosed that Larson was employed as a salesman in the Astle Tractor business and was out at Neel's farm to sell him a tractor. The purchase order first set up in Astle's answer was admitted into evidence. It supplied additional evidence of agency. While it seems inconsistent for appellees to rely on the purchase order in view of their position under the *Holland Furnace Co.* case, having introduced it in evidence, they apparently proceed on the assumption the purchase order is a part of the contract, a position to which Neel in his brief does not seem to be adverse. Under these circumstances the purchase agreement and the purchase order, being two written instruments, may be considered together. It has been held where two instruments are executed by the same parties, at or near the same time, in the course of the same transaction, and concern the same subject matter, they will be read and construed together. (*Skinner v. Skinner*, 126 Kan. 601, 270 Pac. 594.)

So considered, the representation of the tractor as "new" was within the limitation of the authority of the salesman, Larson, and was also within the purview of the written representations required by the purchase agreement.

Contentions (*b*) and (*c*) of appellees relate to whether the written instruments are ambiguous. In (*c*) appellees would argue the purchase agreement is ambiguous when it relates to a "new" tractor, but on the contrary they would say the purchase order is not ambiguous in making reference to demonstrating the tractor.

While it may be argued that the purchase agreement is not ambiguous, yet when the two instruments are read together they are clearly ambiguous as to whether the "new" tractor in the bargain was to be used as a demonstrator prior to delivery to Neel. Contrary to appellees' position in (*b*), the statement in the retail purchase order reciting "Diesel to be delivered after we have completed demonstrating" could just as logically mean demonstrated to Neel as it could knowledge on the part of Neel that the tractor was to be used for demonstration to others. This is particularly true in view of the date upon which the retail purchase order was signed, January 4, 1954, when normally the soil is frozen. The purchase order, contemplating a contract to be made in March, could logically call for a demonstration to Neel when the soil had thawed.

It is an elementary rule of law that where one party to a contract is privileged to set down in writing the terms to which another party is to give assent, and a controversy arises as to their meaning, the contract should be construed strictly against the writer and liberally toward the other party. (*Bankers Mortgage Co. v. Dole,* 130 Kan. 367, 286 Pac. 258; *Francis v. Shawnee Mission Rural High School,* 161 Kan. 634, 170 P. 2d 807; and *Kinmonth v. Holm,* 180 Kan. 389, 304 P. 2d 494.) Thus the trial court, in the absence of evidence as to doubtful language in the written instruments, should have resolved the question against Astle whose salesman prepared the instruments on forms provided by Astle. Dearborn stands in the same position as Astle in this respect.

If appellees' contention under (c) were correct, the court would be required to take judicial notice of a custom or usage directly opposed to the terms of the purchase agreement which described the tractor as new. It must be noted that appellees did not plead custom or usage as to such a trade practice. Generally the custom or usage must be uniform and reasonable, and the party who relies upon it must plead it. (*Lewis v. Metcalf,* 53 Kan. 219, 227, 36 Pac. 346.) Under the doctrine of judicial notice courts take cognizance without proof of facts known generally by well-informed persons, but not of particular facts not of common notoriety, of which they have no constructive knowledge, or which may be disputed by competent evidence. (*Brandon v. Lozier-Broderick & Gordon,* 160 Kan. 506, 163 P. 2d 384.) On the facts and circumstances here presented whether a new tractor correctly described a demonstrator could be disputed by competent evidence.

Dearborn contends that by provision [2] on the reverse side of the purchase agreement Neel waived any claim or defense he might have against Astle in any action by or against Dearborn. This question was not raised in the trial court and is not properly raised for the first time on appeal. (*Hardcastle v. Hardcastle,* 131 Kan. 319, 291 Pac. 757; and *Smith v. Bassett,* 159 Kan. 128, 152 P. 2d 794.) Even were the provision asserted, a contractual waiver of defenses is contrary to public policy and void. (See *Fidelity and Deposit Co. v. Davis,* 129 Kan. 790, 284 Pac. 430; *Fernandez v. Sovereign Camp,* 142 Kan. 75, 46 P. 2d 10; and 44 A. L. R. 2d, § 25, p. 169.)

Neel contends the issue of usury was raised by his answer. The parties have apparently considered this issue as incidental, and

briefing on the point is regarded as inadequate. We express no opinion as to usury in this case.

In conclusion we hold that disputed issues of fact were framed by the pleadings of the respective parties herein and the trial court erroneously sustained motions of Dearborn and Astle for judgment on the pleadings and opening statement of Neel. A premature withdrawal of the case from the jury deprived Neel of his right to have disputed issues of fact resolved by the jury after a full presentation of his evidence.

In view of our holding other matters argued by Neel are immaterial and require no discussion.

The judgment of the trial court is reversed and the case remanded with directions to grant a new trial.