No. 36,934

J. C. ELLIOTT, *Appellant*, v. ALFRED PETERS, *Appellee*.

(185 P. 2d 139)

GEORGE L. ALLISON, judge. Opinion filed October 4, 1947.

*Vernon A. Stroberg* and *J. Sidney Nye*, both of Newton, argued the cause, and *Kenneth G. Speir* and *Herbert H. Sizemore*, both of Newton, were with them on the briefs for the appellant.

*Byron Brainerd*, of Wichita, argued the cause, and *J. G. Somers*, of Newton, *Claude I. Depew, W. E. Stanley, Lawrence Weigand, William C. Hook, Lawrence E. Curfman* and *William C. Kandt*, all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

BURCH, J.: This appeal is from a ruling of the district court sustaining a demurrer to a second cause of action set forth in a petition in which cause the plaintiff alleged gross negligence, reckless conduct and wantonness on the part of the defendant. The action was brought to recover damages resulting from .an automobile collision occurring on a public highway.

The appeal involves the construction which should be given to the plaintiff's amended petition after the plaintiff had successfully

resisted the defendant's motion to make the petition more definite and certain and to strike certain allegations therefrom. Plaintiff alleges in his second cause of action by reference to his first cause of action that U. S. Highway 81 is a major and extensively-traveled thoroughfare consisting of a four-lane concrete slab, with two slabs separated by an "island" approximately three feet in width; the island does not extend into the intersection; the highway runs north and south between the cities of Newton and Wichita; at a point where Harvey and Sedgwick counties join the highway is intersected or joined from the west by a county road which is of black top construction and extensively traveled; the intersection is located on a crest of a rise or hill which slopes north and south from the intersection; such fact was well known to the defendant; on December 2, 1945, at about 9:45 o'clock, p. m., the plaintiff was driving his automobile; as he approached the intersection he slowed his car to a speed of fifteen miles per hour and entered the intersection, turned left and proceeded across the south-bound traffic portion of U. S. Highway 81 with the intent of proceeding west on the county road; as he was about to pass out of the intersection and at a time when his car was astride of the west half of the south bound traffic portion of the highway the defendant, while driving his automobile south on said highway, caused it to run into the automobile of the plaintiff, causing personal injuries and property damage to the plaintiff.

After reference to the foregoing general facts, the second cause of action in plaintiff's amended petition alleges, in substance, that the defendant was guilty of "reckless, gross and wanton negligence or conduct" in one or more, or a combination of one or more, of the following particulars: (a) In operating the defendant's automobile at a speed of approximately eighty miles an hour when he knew, or should have known, of the existence of the extensively traveled county road; of the probability of traffic being thereon; knowing that highway 81 was intersected by the county road near the top of a hill or rise and that his vision would be restricted by the same, and knowing he could not stop at the speed he was traveling in time to avoid colliding with a vehicle which might be in the intersection; (b) in failing to maintain a lookout commensurate with the circumstances, the type of lookout being maintained by the defendant being within his peculiar and personal knowledge; (c) in driving said automobile as aforesaid, knowing that the speed was

dangerous, with four persons in the front seat thereof, which fact impaired his control of the automobile, when the defendant should have known it would be necessary for him to take prompt action to avoid hitting any object which might be in the intersection; (d) in driving the automobile in the alleged circumstances knowing that it was in a defective mechanical condition and had defective lights, which defects were peculiarly within the knowledge of the defendant; (e) in driving said automobile with utter disregard for the rights of others using the highway, when the defendant knew of all the alleged circumstances; and (f) in driving the automobile when the defendant knew that it was impossible for him to stop within the range of his vision and knowing that his vision was restricted by the hill or rise, and knowing that if any object were in the intersection, which fact the defendant knew was probable, a collision was inevitable.

The allegations in plaintiff's second cause of action are much more extensive than the summary thereof indicates but each paragraph contains a repetition of nearly all of the circumstances and in addition allegations that the defendant knew, or should have known, of the existence thereof. The foregoing, however, in substance, sets forth the essential facts which the plaintiff relies upon in combination as alleging "reckless, gross and wanton negligence or conduct." The remainder of the petition consists of allegations pertaining to the injuries and damages sustained by the plaintiff.

The defendant's motion to make the second cause of action more definite and certain and to strike certain allegations therefrom need not be set forth in detail herein. The motion sought to require the plaintiff to allege with more particularity what means of knowledge the defendant had or should have had concerning the existence of the alleged extensively-traveled intersection and whether the county road at the point of collision was a joining road or an intersecting road. The motion sought to require the plaintiff to allege the facts and circumstances which caused the defendant to have knowledge of the conditions which the plaintiff alleged were known or should have been known to the defendant. The motion contains six separate requests on the part of the defendant seeking to have the plaintiff allege the facts which gave the defendant knowledge of the various circumstances or the means of knowledge which the defendant had of the probability of a collision occurring at the intersection or junction of the two highways. In connection with the

argument before the court on the motion, the plaintiff moved for leave to amend the petition by interlineations consisting of inserting the words "peculiar and" preceding any allegation of "personal knowledge of the defendant" wherever said allegation was found in the plaintiff's petition. Upon such motion being made by the plaintiff, the court overruled the defendant's motion to make more definite and certain in its entirety and permitted the plaintiff to amend by such interlineations. Thus, it will be seen that all efforts on the part of the defendant to have the plaintiff allege the basis upon which the defendant had peculiar personal knowledge of the alleged existing circumstances were successfully resisted by the plaintiff. The successful resistance becomes significant because wantonness involves a state of mind indicating indifference to known circumstances. There is substantial difference when wantonness is asserted between what a man actually knows and what he should have known. There is a potent element of consciousness of danger in wantonness. A man cannot realize something he does not know because he should have known it. Comprehension of the necessity for allegations indicating the mental attitude of the defendant requires a closer examination of the allegations contained in plaintiff's second cause of action. As herein set forth, the allegations referred to in the first cause of action set forth the description of the two highways; the collision occurred at night; the plaintiff turned his car to the left and proceeded across the south-bound traffic portion of the highway, at a speed of fifteen miles an hour, for the purpose of proceeding west on the county road; and that there was a crest of a hill at the intersection which was well known to the defendant. In other words, there is nothing specific in the allegations referred to which asserts in any manner the defendant's state of mind as he approached the point of the collision. There is also an absence of any allegation showing that the defendant was in the habit of driving on the highway where the accident occurred or that he had any other basis for personal knowledge of the existence of the alleged rise or hill or of the intersecting or joining highway, or of the probability of traffic. The plaintiff's allegations incorporated by reference in substance state only that the defendant knew of the alleged extensively traveled intersection and of the hill or rise at such point. Nothing can be found in the specific allegations of "reckless, gross and wanton negligence or conduct" which indicates what the "peculiar" and personal knowledge of the

defendant may have been. Therefore, following the motion, the conclusion added but little, if anything, to the allegations which indicate the defendant's state of mind. The motion of defendant, in particular, requested that the amended petition be made more definite "by stating what means of knowledge the defendant had of the probability of a vehicle or other object being in, entering upon, or crossing his [the defendant's] pathway, and to what extent or approximate distance plaintiff claims the defendant's restricted or shortened vision was occasioned by the hill or rise; . . ."

1. The plaintiff uses the phrase, "reckless, gross and wanton negligence or conduct." What is "recklessness"? Our uniform act regulating traffic on a highway defines "reckless driving" for the purpose of the act as follows: "Any person who drives any vehicle in such a manner as to indicate either a willful or a wanton disregard for the safety of persons or property is guilty of reckless driving." (G. S. 1945 Supp., 8-531.) Perhaps the statutory definition is not controlling in the present circumstances because of the criminal nature of the statute. But the same elements are essential when the word "reckless" is relied upon for the purpose of the plaintiff's second cause of action. In *K. P. Rly. Co. v. Whipple*, 39 Kan. 531, 18 Pac. 730, the term is defined at page 542 as follows:

"Recklessness 'is an indifference whether wrong is done or not—an indifference to the rights of others.'"

See, also, *Stout v. Gallemore*, 138 Kan. 385, 391, 26 P. 2d 573. Frequently the word "reckless" appears to be used synonymously with the word "wanton." (See *Railway Co. v. Baker*, 79 Kan. 183, 98 Pac. 804; and *Cohee v. Hutson*, 143 Kan. 784, 57 P. 2d 35.) The word "recklessness" has been given various shades of meaning but when it is used for the possible purpose of circumventing the defense of contributory negligence, "recklessness" should be regarded as synonymous with "wantonness." If it is less than wantonness it is in the nature of negligence and contributory negligence is a defense to it in this state.

2. What is the significance of the gross negligence allegation in the present case? Putting the word "gross" before the word "negligence" does not strengthen the force of the specific facts which may be alleged. "Gross negligence" is still "negligence." If the term is used accurately, "gross negligence" as distinguished from ordinary or slight negligence no longer has any legal consequence insofar as the defense of contributory negligence is concerned in automobile

collision cases in this state. The degrees of negligence long ago were abolished in Kansas. (*Railway Co. v. Walters,* 78 Kan. 39, 96 Pac. 346.) Contributory negligence is a defense to gross negligence. (*Koster v. Matson,* 139 Kan. 124, 30 P. 2d 107.) See, also, *Stout v. Gallemore,* supra, and *Frazier v. Cities Service Oil Co.,* 159 Kan. 655, 157 P. 2d 822. Consequently, the plaintiff's use of the term "gross negligence or conduct" adds nothing to his petition in the present case. Nothing is gained by inserting the word "gross" before "negligence" in cases of this character. It is unfortunate our "guest" statute (G. S. 1935, 8-122b) uses the terms "gross and wanton negligence." Wantonness is distinct from negligence and differs in kind and not in degree. (*Railway Co. v. Baker,* supra.) The question which must be decided is limited to whether the second cause of action set forth in the amended petition alleges wantonness.

3. If the defendant were properly charged with wantonness in the plaintiff's second cause of action, any possible contributory negligence on the part of the plaintiff possibly would not be a defense thereto. (*Frazier v. Cities Service Oil Co.,* supra.) "Wanton conduct" has been defined by this court so many times that a repetition of definitions seems wholly unnecessary. However, for the purpose of developing the consideration of the question presented in the present case, a few definitions may be given.

One of the latest definitions by this court will be found in the fifth paragraph of the syllabus to the opinion in *Frazier v. Cities Service Oil Co.,* supra. It reads:

"To constitute wantonness, the acts complained of must show not simply lack of due care, but that the actor must be deemed to have *realized* the imminence of injury to others from his acts and to have refrained from taking steps to prevent the injury because indifferent to whether it occurred or not. If the actor has reason to believe his act may injure another, and does it being indifferent to whether it does or not, he is guilty of wanton conduct." (Emphasis supplied.)

In *Stout v. Gallemore,* supra, this court, in defining "wantonness," quoted the following from 40 Cyc. 294:

" . . . the conscious failure of one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such failure." (p. 390.)

From *Aduddell v. Brighton,* 141 Kan. 617, 42 P. 2d 555, the following is quoted:

"We see from these authorities that this court has consistently held that

for the conduct of a defendant to constitute a basis for a cause of action under the statute [G. S. 1935, 8-122b] it must show such a reckless disregard of consequences as to evince a willingness that some harmful result will flow therefrom.

"In considering the question of whether the conduct described in the petition evinces such a willingness, we must consider it in the light of what is the general practice of drivers of automobiles. When that criterion is applied, we have no difficulty in concluding that the conduct as described did not show any such attitude." (p. 619.)

In *Anderson v. Anderson*, 142 Kan. 463, 50 P. 2d 995, at page 466 the opinion reads as follows:

"Our task is to ascertain what was in the mind of the driver. Wanton negligence requires as an element a mental attitude on the part of defendant of a will to injure, or such indifference to consequences, with realization that catastrophe is imminent, as to amount to willingness to injure. This distinguishes such conduct from negligence, which is merely failure to exercise due care."

(See, also, *Leabo v. Willett*, 162 Kan. 236, 175 P. 2d 109, and citations therein.)

4. The question, therefore, narrows itself to consideration of whether the amended petition alleges facts, as distinguished from descriptive terms, from which the court can conclude that the defendant was charged with being indifferent to the probable detrimental consequences of his conduct. It should be noted that there is no specific allegation in the petition which accuses the defendant of being indifferent to what might happen after the defendant had knowledge of any particular circumstances and was conscious therefrom of the possible or probable peril. The nearest approach to any such allegation is that the ·defendant drove "approximately eighty (80) miles per hour, in the night time, and on a major highway, with utter disregard of the rights of others using said highway, . . ." But there is no allegation to the effect that the defendant saw the plaintiff's car in the intersection or approaching the intersection and therefore was guilty of a conscious failure to observe due care. To hold that a motorist who drives at 80 miles an hour, in the nighttime, with disregard of the rights of others who might be using the highway even though the motorist did know that others using said highway might make a left turn in front of the approaching car, was guilty of wantonness would require us to disregard the element of wantonness which requires that one ordinarily cannot be held guilty of wanton conduct if the

conduct occurs before the peril is actually discovered. (See *Stout v. Gallemore,* supra.) It cannot be said correctly that one can be charged with wantonness when driving eighty miles an hour, in the nighttime, merely because he is conscious of the fact that he will pass intersections upon which other vehicles might be traveling. It may be conceded that a motorist, who drives at eighty miles an hour, in the nighttime, in a defective automobile without proper lights, is guilty of a lack of due care. However, such facts fall far short of establishing that the motorist who so drives is consciously willing that injury may result to others as a consequence of his careless conduct. Excessive speed is indicative of negligence. In *Anderson v. Anderson,* supra, a father drove the members of his family at a speed of seventy miles an hour on a gravel highway which had a ridge of sand at its side. This court held that such speed and the existing circumstances, which included driving with a defective tire, did not demonstrate a mental attitude on the part of the defendant which was equivalent to a will to injure or indifference to injury. Speed ordinarily indicates a desire to reach a destination quickly. The reasons which may motivate the motorist in driving too fast may be justifiable. As a result, it cannot be said that excessive speed, as a matter of law, always indicates an attitude of indifference to consequences. A man with his child by his side might be driving at excessive speed in order to reach a hospital, but it would not follow necessarily that he would be indifferent to whether an accident occurred which might result in his own injury, the injury of his child, or of a third party. A driver of a racing car in a speed contest might be traveling at 150 or 200 miles an hour without being willing to kill or injure himself or any of the spectators. The speed at which a driver operates his automobile, therefore, is not an accurate test for determining the state of mind of a driver. An allegation of negligence is not converted into an allegation of wantonness by the pleader estimating the speed of a car at a high rate. Counsel for the plaintiff contend, however, that the speed, coupled with the knowledge of other alleged circumstances, sufficiently indicates indifference to injurious consequences on the part of the defendant.

Consideration will be given to the additional circumstances. The petition alleges that the defendant was driving an automobile "in a defective mechanical condition and having defective lights." In *Aduddell v. Brighton,* supra, it was alleged that the defendant was

operating an automobile at a speed of fifty miles an hour with headlights that were "not reasonably serviceable." And in the opening statement it was asserted that the defendant "did not apply his brake, or do anything in that nature, or anything that would slacken his speed or stop this automobile, . . ." It was further alleged in the petition that the defendant knew that stray and uncontrolled livestock would likely be on the highway and that he "knew, or should have known, . . . that he would likely strike such obstructions." The court held that such combination of elements did not alone constitute wantonness. (See, also, *Donelan v. Wright*, 148 Kan. 287, 81 P. 2d 50, as to lack of lights; and *Anderson v. Anderson*, supra, as to other defects in the car.)

In *Murrell v. Janders*, 141 Kan. 906, 44 P. 2d 218, the petition alleged that the defendant was familiar with the highway, was driving sixty to seventy miles an hour, on a paved state highway, when three cars were approaching; when defendant was about 600 feet from the middle car it turned to the left and started to cross the pavement, then turned back and when it was not entirely across the center line of the highway the defendant's car struck it even though there was adequate room on defendant's side of the pavement for him to pass the other car without striking it. It was alleged that because of his speed or inattention he failed to give any attention or make any effort to control his car. The opinion reads:

". . . This charges nothing more than lack of due care, which is negligence." (p. 908.)

From the foregoing it will be seen that many of the elements relied on by the plaintiff as showing wantonness on the part of the defendant have been considered by the court as insufficient indications of wanton conduct. Other alleged circumstances also have received consideration by the court with like consequences. The plaintiff alleges that the fact the defendant was driving when his car was overcrowded indicates wantonness. The court is of the opinion that the fact there were four people in the front seat of the defendant's car does not make it obvious that he was indifferent to consequences. In such circumstances the defendant's "natural concern for his own safety" and for the safety of the occupants of his car would preclude any assumption that the defendant was driving with reckless unconcern for the probable results of his conduct. (*Cohee v. Hutson*, supra, and *Ewing v. Edwards*, 140 Kan. 325, 36 P. 2d 1021.)

From the foregoing it follows that the plaintiff's petition, in substance, only alleges that the defendant was driving eighty miles an hour on a four-lane highway, knowing of circumstances which were not unusual. In other words, almost everybody driving a car knows that highways will be intersected by other roads upon which the traffic may be more or less heavy. There is nothing alleged in the petition which is unusual about the defective condition of the lights or other mechanical defects in defendant's car as our decisions demonstrate. Consequently, the only facts alleged which might distinguish this case from the ordinary case of driving at excessive speed in the nighttime is the alleged knowledge on the part of the defendant that he was approaching a rise or a hill upon which was located the intersecting or joining road and that defendant's vision would be restricted by the rise or hill.

The plaintiff's allegations relative to the rise or hill in the highway diminish in significance as a result of the defendant's motion to make such allegations definite and certain and the adverse ruling thereon. As hereinbefore set forth, the defendant's motion not only sought to require the plaintiff to allege what means of knowledge the defendant had of the probability of a vehicle crossing the highway on the intersection at the top of the hill, but in addition the motion sought to have the plaintiff state the extent or approximate distance the plaintiff claimed the defendant's vision was restricted or shortened by reason of the hill or rise. Thus, it will be noted that the plaintiff successfully resisted giving the defendant any information to the effect that the defendant saw or could have seen or could not have seen the plaintiff's car about to cross in front of the defendant's car in time for the defendant to have avoided the accident. The plaintiff's petition does not allege that the hill or rise restricted the defendant's vision to such an extent that the defendant could not, with the exercise of ordinary care, have seen the car crossing the intersection in time to have avoided the accident under the existing circumstances and that the defendant was aware of such fact. As a result of the successful resistance of the motion, the allegations in plaintiff's petition must be strictly construed when subsequently tested by a demurrer. (*Frogge v. Kansas City Public Service Co.*, 159 Kan. 687, 157 P. 2d 237, and *Frazier v. Cities Service Oil Co.*, supra.)

When strictly construed, plaintiff's allegations fail to set forth

that the hill or rise in the highway restricted the defendant's vision to such an extent that he was unable to see other cars in the intersection in adequate time to avoid running into the same. The petition only says that the defendant was driving his car "knowing that said county road intersected or joined U. S. 81 at, on, or near the top of a hill or rise, and that his vision with respect to traffic at, within or crossing such intersection was, therefore, greatly restricted, and well knowing that at the speed he was then and there traveling, he could not stop, slow or deviate from his path in order to avoid colliding with a vehicle or other object that was or was likely to be within such intersection on his side of said U. S. 81." In order to avoid being guilty of wantonness, the defendant was not required to stop or slow down unless some known circumstance or circumstances made him aware of the peril. There is no contention that the hill or rise completely obstructed observation of other vehicles in the highway and that the defendant knew or should have known such fact. The inference follows that the hill or rise was not of such character because the plaintiff resisted making allegations to such effect. In such circumstances, we can find no basis for concluding that the defendant's personal or peculiar knowledge of the hill or rise was such as would establish willingness on his part that an accident occur, or indifference as to whether it probably would occur. In other words, the plaintiff has not contended that there was anything unusual about the hill or rise and, consequently, we have before us merely another instance of a condition which commonly exists in connection with the driving of automobiles upon the highways. We are unable to reach the conclusion in this case that the allegations separately or in combination set forth or imply a mental attitude on the part of the defendant indicative of wantonness.

The judgment of the district court is affirmed.

HARVEY, C. J., and SMITH, J., dissent.