No. 40,191

G. B. Long, a Minor, by Bryan Long, his Father, Natural Guardian, Legal Guardian and Next Friend, *Appellee*, v. Loyd Foley, Administrator of the Estate of Lowell Foley, Deceased, *Appellant*.

(299 P. 2d 63)

. Opinion
filed June 30, 1956.

*Hal E. Harlan,* of Manhattan, and *Wm. B. Ryan,* of Norton, argued the cause, and *A. M. Johnson,* of Manhattan, and *George P. Nellans, Jr.,* of Norton, were with them on the briefs for the appellant.

*L. F. Cushenbery,* of Oberlin, and *Frank B. Morrison,* of Lincoln, Nebraska, argued the cause, and *John M. Bremer* and *Ernest McRae,* both of Oberlin, were with them on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This is an action by G. B. Long, a minor, brought by his father as natural guardian and next friend, against the estate of Lowell Foley, deceased, to recover damages for injuries sustained when an automobile, in which such minor was riding as a guest of the decedent, collided with another motor vehicle on a public highway. The case originated in probate court but subsequently, as authorized by statute (G. S. 1949, 59-2402), was transferred to district court and tried by a jury. Plaintiff recovered and the defendant appeals.

The nature of the appeal is such it merits more than ordinary attention. For that reason the pertinent facts and other matters involved in connection with the issues presented will be fully detailed, outlined and discussed.

At the outset, since error assigned in the overruling of a demurrer to the petition is neither briefed nor argued, it may be stated that the pleadings are not in question and require no detailed reference.

Hence, for all pertinent purposes, it can be said that plaintiff's petition alleges he was a guest, riding in the automobile of Lowell Foley and, specifying the acts relied on, seeks recovery on the theory that such decedent's gross and wanton negligence caused the involved accident; and that the answer, after generally and specifically denying all acts of negligence relied on in the petition, alleges that negligence of the driver of the other automobile caused the collision, also that plaintiff's own negligence contributed to his injuries and therefore precluded his recovery.

The facts, events, and proceedings required to give readers of this opinion a proper understanding of what is involved on appellate review can be stated thus:

The city of Oberlin is located in the northwest portion of Kansas in Decatur County. U. S. Highway 36 runs in a east and west direction along the north side of such city and U. S. Highway 83 runs in a north and south direction along the west side thereof. The highways intersect at the northwest corner of the town. A gas filling station with private driveways from the south and west is located at the northeast corner of this intersection. Another filling station, cafe and Port of Entry station with private driveways from both the north and west is located at the southeast corner of such intersection and a drive-in cafe, with private driveways from the north and east, is located at the southwest corner thereof. On the date and at the time in question such intersection was protected by a traffic light, located above the center thereof, which flashed amber or caution for east and west traffic on U. S. 36 and red for traffic going north and south on U. S. 83 through the intersection. In addition, for the protection of traffic and the public in general, there were stop signs on U. S. 83 on both sides of U. S. 36, the stop sign north of the north line of U. S. 36 being located on the west side of U. S. 83 and sixty-five feet north of U. S. 36.

Early in the evening of February 24, 1954, some fifteen or sixteen boys, who were high-school students at Oberlin, left that city in two cars and a pickup truck for Danbury, Nebraska. All parties were students in the high school and friends. On the way back from Danbury the plaintiff and five other young men were riding as guests of Lowell Foley, who was driving his own automobile. Behind them was a pickup truck, driven by Derry Bishop, in which several boys were riding. About a mile or two north of the intersection in question, as these motor vehicles were traveling south

on U. S. 83 toward Oberlin, the driver of the pickup truck tried to pass the Foley car but on each occasion Foley increased his speed and such attempts were unsuccessful. When the vehicles reached a point one-half mile north of such intersection this racing ceased to the extent that Bishop dropped behind the Foley car. Foley, however, did not materially reduce his speed but continued on down the highway at approximately seventy miles per hour. As he drew near the intersection his brake lights were seen to light up momentarily. However, notwithstanding he was familiar with it, and with the surrounding territory, Foley proceeded on across the intersection of U. S. 83 and U. S. 36, without slowing down; without stopping at the stop sign; without warning of any kind; and without regard for the flashing red light, at a speed of seventy miles per hour and on down U. S. 83, which was then within the city limits of Oberlin in a thirty mile per hour speed zone. Immediately after crossing the intersection at the rate of speed indicated he swerved his car to the left and east on U. S. 83 in order to pass an automobile which had turned in front of his vehicle for the purpose of driving into the driveway on the west side of the road. He then continued on down such highway to a point 294 feet south of the south side of U. S. 36 where, having by this time reduced his speed to sixty miles per hour, he crashed head on, at approximately 10:30 p. m., into another automobile approaching from the south at a speed of ten miles per hour, driven by Clarence Musgrave, at a time when both automobiles were partially over the center line of such highway and partially out of their respective lanes of traffic.

The result of the collision, which demolished both automobiles, was indeed tragic. Mr. and Mrs. Musgrave, occupants of the other automobile involved, were killed. Foley and two other young men in his automobile were killed. The four remaining occupants of his vehicle each sustained serious injuries, the most severely injured being the plaintiff who, by reason of his injuries, according to the undisputed medical testimony adduced at the time of the trial, had become permanently paralyzed from the waist down for life, such paralysis including bladder and rectal function. Other undisputed evidence adduced at the trial discloses that as a result of his injuries plaintiff had and will continue to have severe pain and suffering; that he incurred large hospital and medical bills; and that he will require constant care and attention during the duration of his paralysis. In addition, it should be added, that

according to a stipulation between the parties, plaintiff was 15 years old at the time of the accident and his life expectancy "would be 51 years of age."

The cause was heard by a jury with issues joined and on facts, which it is to be noted do not purport to cover the details of all evidence adduced, as heretofore related. At the close of such trial, after both parties had made requests for instructions and special questions and objections to instructions and special questions the court had indicated would be submitted, the cause was submitted to the jury which returned a general verdict in favor of plaintiff for a liberal sum, and answered special questions, which read:

"1. Was the plaintiff, G. B. Long, familiar with the intersection of U. S. Highways No. 83 and 36, as it existed on the night of the accident? ANSWER: Yes.

"2. Was Lowell Foley, now deceased, racing with the pickup truck driven by Derry Bishop on U. S. Highway No. 83 at a point approximately one or two miles north of the intersection of Highways No. 83 and 36? ANSWER: Yes.

"3. If you answer Question No. 2 'Yes', then state how close the two vehicles were to the intersection of U. S. Highways No. 83 and 36, when the race ended? ANSWER: ½ mile.

"4. Did the plaintiff, G. B. Long, at any time make any protest to Lowell Foley as to the manner in which Foley was operating his automobile? ANSWER: Do not know.

"5. Did plaintiff Long at any time ask Lowell Foley to reduce the speed of his automobile or to drive in a more careful manner? ANSWER: Do not know.

"6. If you answer question No. 6, 'Yes', then state approximately where on the road back from Danbury, Nebraska, Long was when he made such request? ANSWER: Do not know.

"7. Did the plaintiff, Long, at any time request Lowell Foley to stop his automobile and let him, Long, out of the same? ANSWER: Do not know.

"8. If you answer Question No. 8, 'Yes', then state approximately where on the road back from Danbury, Nebraska, the plaintiff Long was when he made such request? ANSWER: Do not know.

"9. In the event you find in favor of the plaintiff, Long, in this case then state: (A) Whether Lowell Foley was guilty of negligence, and the act or acts on the part of Foley, constituting such negligence. ANSWER: Yes, failed to stop at stop sign. (B) Whether Lowell Foley was guilty of gross and wanton negligence as defined in the instructions the Court has given you, and the act or acts on the part of Foley constituting such gross and wanton negligence? ANSWER: Yes, excessive speed at a dangerous intersection.

"10. Did Lowell Foley, deceased, cross U. S. Highway 36 against the red flashing light? ANSWER: Yes.

"11. Did the deceased Lowell Foley stop immediately before crossing U. S. Highway 36? ANSWER: No.

"12. If you answer the foregoing question 'No', would this collision have occurred if Lowell Foley had stopped before crossing U. S. Highway 36? ANSWER: No.

"13. At what speed was Lowell Foley driving his vehicle when he crossed U. S. Highway 36? ANSWER: 70.

"14. At what speed was Lowell Foley driving his vehicle at the time of the impact with the Musgrave car? ANSWER: 60.

"15. Did G. B. Long have time to warn the driver, Lowell Foley, as he saw Foley was not going to stop at U. S. Highway 36? ANSWER: Do not know.

"16. Did G. B. Long have time to warn Lowell Foley of danger of collision or to request permission to leave automobile after Foley car passed the intersection just prior to accident? ANSWER: No."

Following action as heretofore indicated the general verdict and the special verdict, consisting of the answers of the jury to the submitted special questions, were read in open court in the presence of the court, the jury, and the attorneys for the parties. Thereupon the court approved the general verdict and rendered judgment in favor of plaintiff and against defendant in accord therewith. It then directed that execution be stayed until after the hearing of a motion for a new trial. Thereafter, defendant filed a motion for judgment *non obstante veredicto* on the ground the answers to the special questions of fact, particularly the answer of the jury to question No. 9 compelled a judgment in his favor; also a motion for a new trial on grounds which, so far as here argued or presented, were to the effect he was entitled to a new trial because (1) of erroneous rulings and instructions; (2) the verdict was under the influence of passion and prejudice; and (3) the verdict was wholly contrary to the evidence. In due time these motions were presented, argued and denied. The defendant then perfected the instant appeal.

In a preliminary way, approaching consideration of the issues, we are moved to state that since they are all in point and, regardless of their merit, are of such nature as to warrant attention, it may be assumed that when this opinion is concluded we have treated and disposed of each and every point relied on by appellant as affording a basis for his position the judgment should be reversed.

Under a general heading "The trial court should have sustained defendant's motion for judgment *non obstante veredicto*" appellant advances divers contentions to which we shall now direct our attention. In discussion relating to this subject it must be kept in mind that for purposes of ruling on such a motion it is admitted there was evidence to support the jury's special findings. (*Ban-*

*berry v. Lewis,* 173 Kan. 59, 244 P. 2d 202; *Sams v. Commercial Standard Ins. Co.,* 157 Kan. 278, 139 P. 2d 859, and cases there cited.)

The most important, if not the first contention argued, is that Foley's speed of seventy miles per hour at the intersection did not constitute gross and wanton negligence. For the moment we will consider this contention as stated in appellant's brief, noting as we do so that hereafter, throughout the remainder of this opinion, the term "appellant" is to be considered as having reference to Lowell Foley, deceased.

The involved action, as we have heretofore indicated, comes under the guest statute of this state (G. S. 1949, 8-122b) providing that no person who is transported by the owner or operator of a motor vehicle, as his guest, shall have a cause of action for damages against such owner or operator for injury unless such injury shall have resulted from the gross and wanton negligence of the operator of the vehicle involved. The yardstick to be used in determining whether the facts of a given case constitute "gross and wanton negligence," within the meaning of that term as used in such statute, is no longer an open question in this jurisdiction and it will not be necessary to cite all the cases dealing with the subject. However, it can be said the tests to be applied in determining such a question are no different in jury cases than in those where the sufficiency of pleadings are involved. Such rules are well stated in *Bailey v. Resner,* 168 Kan. 439, 214 P. 2d 323, frequently cited in later decisions, where the following appears:

"By many previous decisions of this court the phrase 'gross and wanton negligence' has been held to mean 'wantonness' (*Stout v. Gallenmore,* 138 Kan. 385, 26 P. 2d 573; *Frazier v. Cities Service Oil Co.,* 159 Kan. 655, 664, 157 P. 2d 822, and cases cited therein; *Elliott v. Peters,* 163 Kan. 631, 635-6, 185 P. 2d 139).

"What is wantonness and how should it be defined? This court has defined it in nearly a score of cases since the enactment of the guest statute in 1931 (citing cases), and it may be said that the sum total of these definitions expounded in the past amounts to this—a wanton act is something more than ordinary negligence, and yet it is something less than willful injury; to constitute wantonness, the act must indicate a realization of the imminence of danger and a reckless disregard and complete indifference and unconcern for the probable consequences of the wrongful act. It might be said to include a willful, purposeful, intentional act, but not necessarily so; it is sufficient if it indicates a reckless disregard for the rights of others with a total indifference to the consequences, although a catastrophe might be the natural result.

"The term 'wantonness' or 'wanton conduct' has been defined by this court

in cases other than those involving the guest statute (G. S. 1935, 8-122b), and it is difficult to find a more adequate definition of the term than is found in one such case—*Frazier v. Cities Service Oil Co.,* supra, at page 666:

" '. . . it may be concluded that as to injuries inflicted, wanton conduct or wantonness comes between negligence on the one hand and willful or malicious misconduct on the other; that it is more than negligence and less than willfulness, and to constitute wantonness the acts complained of must show not simply lack of due care, but that the actor must be deemed to have realized the imminence of injury to others from his acts and to have refrained from taking steps to prevent the injury because indifferent to whether it occurred or not. Stated in another way, if the actor has reason to believe his act may injure another, and does it being indifferent to whether or not it injures, he is guilty of wanton conduct.' " (pp. 441, 442.)

For other recent decisions, where the rules above quoted are adhered to and pertinent portions thereof stated in one form or another, see *In re Estate of Kerschen,* 176 Kan. 226, 269 P. 2d 1033; *MacDougall v. Walthall,* 174 Kan. 663, 257 P. 2d 1107; *Hanson v. Swain,* 172 Kan. 105, 238 P. 2d 517; *In re Estate of Bisoni,* 171 Kan. 631, 237 P. 2d 404; *Fyne v. Emmett,* 171 Kan. 383, 233 P. 2d 496; *In re Estate of Wright,* 170 Kan. 600, 228 P. 2d 911.

When all the facts of this case are considered together, particularly those relating to the status of the intersection with respect to warning lights and stop signs; the character of the two highways; the appellant's familiarity with such intersection and the territory surrounding it; and the conditions and circumstances under which he approached, entered into and crossed it at the hour of 10:30 p. m., are tested by the foregoing rules we are unwilling to say, as a matter of law, that appellant's acts and conduct in crossing the intersection at a speed of seventy miles per hour did not constitute gross and wanton negligence. The result is that appellant's position, as stated, on the point now under consideration cannot be upheld. This, we may add, adds nothing new and startling to the annals of our reports. See, e. g., *Knoblock v. Morris,* 169 Kan. 540, 220 P. 2d 171, where, although it was not a guest statute case, we said:

". . . Defendant knew the stop sign was there and he knew that U. S. Highway 40 was a so-called high-speed four-lane highway. He approached the intersection at a speed of thirty or thirty-five miles per hour and from the physical fact of his car 'shooting' out into the highway the jury was justified in finding that from all of the surrounding facts and circumstances his manner of driving showed a wanton disregard of the safety of others properly on the highway." (p. 545.)

In reaching the conclusion just announced we have not over-

looked an argument made by appellant that this court on many occasions has held that speed alone is not gross and wanton negligence. Conceding the point it is clear that the existing facts disclose more than speed alone. Neither have we disregarded decisions cited by him (See *Murrell v. Janders,* 141 Kan. 906, 44 P. 2d 218; *Anderson v. Anderson,* 142 Kan. 463, 50 P. 2d 995; *Donelan v. Wright,* 148 Kan. 287, 81 P. 2d 50; *Aduddell v. Brighton,* 141 Kan. 617, 42 P. 2d 555; *Leabo v. Willett,* 162 Kan. 236, 175 P. 2d 109; *Elliott v. Peters,* 163 Kan. 631, 185 P. 2d 139; *Mason v. Banta,* 166 Kan. 445, 201 P. 2d 654), where questions of speed and other facts were involved and held to be insufficient to show gross and wanton negligence. All such decisions have been carefully examined and, on the basis of the facts and circumstances there involved, must be regarded as clearly distinguishable. Nor have we failed to consider an argument that appellant's speed of seventy miles per hour at the point in question (at the hour of 10:30 p. m.) on a straight smooth road, comes a long way from being gross and wanton negligence. The trouble is such a conclusion is simply not warranted by the confronting facts and circumstances.

Conceding it was 10:30 p. m. and his speed was seventy miles per hour, it is argued there is no evidence appellant realized the imminence of danger when he ran through the stop sign. We refuse to subscribe to the theory that under facts, as heretofore related, there is merit to such argument. On the contrary our view is that faced by the factual situation heretofore described he was bound to know that danger was imminent and his conduct in disregarding it indicated a reckless disregard and complete indifference and unconcern for the probable consequences of his action.

Next it is urged that appellant is entitled to the presumption that with love of life, common to all, he exercised due care to protect himself and his passengers from injury at the time of the collision. It is true, as appellant points out, that the rule in this jurisdiction is that ordinarily, and in the absence of convincing evidence to the contrary, it will be presumed that a deceased person exercised reasonable care for his own safety. (*In re Estate of Modlin,* 172 Kan. 428, 436, 241 P. 2d 692; *Henderson v. National Mutual Cas. Co.,* 164 Kan. 109, 187 P. 2d 508; *Smith v. Bassett,* 159 Kan. 128, 152 P. 2d 794; *Eidson v. Railway Co.,* 85 Kan. 329, 116 Pac. 485; *Railroad Co. v. Gallagher,* 68 Kan. 424, 75 Pac. 469; *C. R. I. & P. Rly. Co. v. Hinds,* 56 Kan. 758, 44 Pac. 993.)

The difficulty, from appellant's standpoint, is that the presumption is always rebuttable and is overcome when there is proof to the contrary. (See *Stroud v. McCusker*, 175 Kan. 257, 261, 263 P. 2d 260; *In re Estate of Modlin*, supra; *Goodloe v. Jo-Mar Dairies Co.*, 163 Kan. 611, 185 P. 2d 158; 61 C. J. S., Motor Vehicles, 240 § 512; 20 Am. Jur., Evidence, 164, 214 §§ 160, 217.) Appellee's evidence supplies that proof. It reveals that, in the nighttime, wholly ignoring visible signs placed on the highway and in the intersection for safety purposes appellant crossed the involved intersection at a speed of seventy miles per hour and had proceeded on down the highway only 294 feet when he collided with another automobile at a time when he was still traveling sixty miles per hour in violation of state and city laws. That, in our opinion, is more than enough to overcome the presumption relied on.

It is further contended that the jury's finding (see Special question 9 [B] and its answer) "excessive speed at a dangerous intersection" does not, as a matter of law, constitute gross and wanton negligence. It may be conceded there are situations where excessive speed at an intersection does not have that force and effect as a matter of law. However, since we have heretofore determined that the existing facts and circumstances, as disclosed by the evidence, were sufficient to take the question of gross and wanton negligence to the jury this portion of appellant's argument requires no further consideration. In connection with this question it is pointed out that in this jurisdiction the law is well settled that where the jury in answer to special questions finds a defendant guilty of a particular act of negligence he is acquitted of all other acts of negligence claimed in the petition or mentioned in the evidence. The rule of law relied on is sound and may be conceded. However, under the facts of record it does not follow, as appellant insists, that because the involved collision did not take place in the intersection but south of there, that excessive speed *at* such intersection, relieves appellant of liability for this accident or acquits him of negligence at a point 294 feet down the highway. Under well recognized definitions, the primary meaning of the word "at" is "near." (See, *e. g.*, Ballentine [Second Edition] Law Dictionary with Pronunciations, page 120; Webster's New International Dictionary [Second Edition] page 172, stating "Thus, *at* the house, may be *in* or *near* the house.") With the foregoing definition, mindful of the universal rule that where—as here—a finding of

gross and wanton negligence is inherent in the general verdict and that special questions must be construed in harmony therewith wherever possible; and keeping in mind that simple mathematical computation discloses that at the undisputed rate of speed appellant was traveling (seventy miles per hour in leaving the intersection—sixty miles per hour at the moment of the impact) it only took him approximately three seconds to traverse the 294 feet to where the collision occurred, we think it must be held that the jury in answering question 9 (B) used the word "at" in accord with the definition above indicated. The result is that, contrary to appellant's contention, the answer to such question is not only a proper finding of gross and wanton negligence under the confronting facts and circumstances but is also consistent with the general verdict and must therefore be approved. In leaving this subject and without laboring the point it must be stated that we cannot agree with appellant's contention that under the existing facts the intersection presented no special hazard and became simply a part of the open road, hence the jury's characterization of the intersection as a "Dangerous intersection" is a misnomer and should be treated as mere surplusage.

One other contention advanced by appellant in connection with its general claim the trial court should have sustained its motion for judgment *non obstante veredicto* remains to be considered. It is argued that the finding of gross and wanton negligence, to which we have heretofore referred, was not the proximate cause of the collision and flatly stated that the proximate cause thereof was the negligence of the driver of the other automobile. Assuming *arguendo* Musgrave was negligent, as contended, the short and simple answer to all new arguments advanced on this point is that under the established law of this state concurrent negligent acts of two or more parties render them liable as joint tortfeasors. It is neither necessary nor required that we here labor the reasons for the rule or the numerous authorities citing it. The authorities dealing with the subject and supporting the conclusion just announced are cited and discussed at pages 174 and 175 in the opinion of *Reed v. Mai*, 171 Kan. 169, 231 P. 2d 227, where they can be found by reference.

The next contention advanced by appellant is to the effect the trial court erred in giving instruction 21, over his objection. The instructions are not set out in full. In fact the only instruction brought here by the record is the one above indicated. In that

situation there is authority (see *Steck v. City of Wichita,* 179 Kan. 305, 295 P. 2d 1068) holding that a single instruction complained of is not subject to review. However, since it may be implied from argument that appellant is contending there is a clear and prejudicial misstatement of the law contained in such instruction we shall deal with his complaint on the subject.

Instruction 21, as submitted by the trial court, reads:

"The ordinary presumption in the absence of direct evidence is that an individual exercised reasonable care for his own safety because of love of life, the instinct of self preservation and the known disposition of persons to avoid injuries; however, this inference or presumption is overthrown when there is direct proof to the contrary."

Appellant cites but one case (*Brim v. Atchison, T. & S. F. Rly. Co.,* 136 Kan. 159, 12 P. 2d 715) as supporting his position We believe a careful analysis of that case discloses it is distinguishable. In any event, under the facts, issues and law of this particular case, we find nothing wrong with such instruction and hold that its submission did not constitute error.

The next contention advanced by appellant is that the court erred in refusing to require the jury to make definite answers to special questions 4, 5, 6, 7, 8 and 15, heretofore quoted. It will be noted these questions and answers all have to do with matters pertaining to contributory negligence on the part of the appellee. We have examined the evidence and have reached the conclusion that in the light of all the testimony this court would have found it extremely difficult, if not impossible, to have answered such questions in any other manner. In that situation we cannot say the trial court erred in refusing to require the jury to make the answers complained of more definite. For the same reason, although arguments advanced with respect thereto have been carefully considered, we are forced to conclude that another claim made by appellant, *i. e.,* that the answers "Do not know" to all such questions establish bias and prejudice on the part of the jury in reaching its verdict, cannot be upheld.

Resort to the authorities discloses another sound reason for holding the trial court committed no reversible error in denying appellant's request to send the jury back for the purpose of making the answers to the questions, to which we have heretofore referred, more definite and complete. At the most if, as appellant suggests, each such question had been answered in the affirmative the findings would have merely convicted appellee of contributory negligence.

In this jurisdiction the rule, that in actions to recover damages for injuries sustained in automobile accident cases contributory negligence bars recovery, is of no avail to a defendant whose wanton conduct or wantonness is the direct and proximate cause of such injuries. For automobile collision cases announcing and/or adhering to this rule see *Howse v. Weinrich,* 133 Kan. 132, 135, 136, 298 Pac. 766, where it is said "In this instance there is ground for a finding of recklessness on the part of the driver, and in that event the contributory negligence of plaintiff is not of consequence." See, also, *Baker v. Western Cas. & Surety Co.,* 164 Kan. 376, 384, 190 P. 2d 850; and pages 635 and 636 of the opinion in *Elliott v. Peters,* supra.

For other Kansas decisions of like import, but dealing with different types of actions to recover damages in negligence cases, see *Kniffen v. Hercules Powder Co.,* 164 Kan. 196, 198, 188 P. 2d 980; *Frazier v. Cities Service Oil Co.,* supra, Syl. ¶ 4; *Jacobs v. Railway Co.,* 97 Kan. 247, 253, 154 Pac. 1023; *Railway Co. v. Baker,* 79 Kan. 183, 98 Pac. 804; *Railway Co. v. Carlson,* 58 Kan. 62, 48 Pac. 635; *K. P. Rly. Co. v. Whipple,* 39 Kan. 531, 18 Pac. 730. For well recognized textbooks and legal treatises treating the same subject see 61 C. J. S., Motor Vehicles, 94 § 486f; 4 Blashfield's Cyc. Automobile Law & Practice §§ 2396, 2776; 2 Berry on Automobiles (Seventh Edition) 376 § 2.340; 5-6 Huddy Cyc. of Automobile Law (Ninth Edition) 240 § 135.

Inasmuch as the jury by its general verdict and its answer to question 9 had convicted appellant of gross *and wanton* negligence adherence to the foregoing decisions means that even if the trial court should have sent the jury back to make more definite answers to such questions its failure to do so did not prejudicially affect the substantial rights of the appellant and therefore, under our statute (G. S. 1949, 60-3317), affords no sound ground for reversal of the judgment.

We find no further questions touched upon by appellant in briefs or on oral argument that have not been heretofore treated, discussed and determined; and what has been heretofore stated and held clearly demonstrates our view that no question raised by appellant warrants the disturbance of the judgment or the granting of a motion for a new trial. Therefore such judgment must be affirmed.

It is so ordered.