No. 43,723

WINFIELD LIVESTOCK AUCTION, INC., *Appellant*, v. THE FARMERS STATE BANK OF HARDTNER, KANSAS, a Banking Corporation, *Appellee*.

(394 P. 2d 7)

Opinion filed July 14, 1964.

*Warren D. Andreas,* of Winfield, argued the cause, and *G. D. McSpadden,* also of Winfield, and *O. M. Wheat,* of Medicine Lodge, were with him on the brief for the appellant.

*W. Luke Chapin,* of Medicine Lodge, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action by the Winfield Livestock Auction, Inc. (plaintiff-appellant), payee of a check which was protested and returned by the Farmers State Bank of Hardtner Kansas (defendant-appellee), upon which the check was drawn, seeking to recover from the bank the uncollected balance of the check. Upon joinder of issues and after a pretrial conference, the trial court sustained a motion for judgment on the pleadings, as amended, and upon the admissions made by the plaintiff. It thereupon entered judgment for the defendant, and appeal has been duly perfected by the Winfield Livestock Auction, Inc.

The only question to determine on appeal is whether a material issue of fact is presented and remains undetermined upon the pleaded and conceded facts.

Ordinarily a motion for judgment on the pleadings invokes the judgment of the trial court on questions of law as applied to the pleaded and conceded facts. A judgment on the pleadings is rendered not because of lack of evidence or proof, but because of a lack of issue of fact. If there is no issue of material fact presented by the pleadings, then it becomes a question of law as to which party is entitled to judgment. But if a material issue of fact is presented and remains undetermined, a judgment on the pleadings is improper. (*Buechner v. Trude,* 175 Kan. 572, 266 P. 2d 267; and *Geier v. Eagle-Cherokee Coal Mining Co.,* 181 Kan. 567, 313 P. 2d 731.)

The pretrial order in the instant case was relatively simple and consisted of admissions and stipulations of the parties, hereafter to be related, by reason of which the trial court was called upon to determine whether any material issues of fact remained to be determined. The lower court answered the question in the negative and its judgment terminated the action. It was a final judgment from which the appellant has properly perfected an appeal.

The facts in the instant case are rather complicated. To avoid confusion in the law of banking it is deemed advisable to set forth a portion of the pleadings in considerable detail.

Unless otherwise indicated, the procedural chronology is immaterial and the pleadings will be presented in such a manner as to disclose the issue presented for determination.

The appellant's amended petition is set forth in two causes of action. The allegations of the first cause of action material to the issue herein read:

"3. That on or about March 3, 1962, Floyd Acord, a well-known cattleman in Kansas and Oklahoma, who had done business with the defendant for many years, purchased some cattle from the plaintiff and gave a check in payment therefor in the amount of $24,245.73; that the plaintiff deposited said check in the regular course of business; that on or about March 7, 1962, said check was protested and the defendant refused to make payment upon it; that on March 5, 6 and 7, 1962, at the close of the banking business of each of said days, there was in excess of $40,000.00 in the checking account of Floyd Acord; that on March 7, 1962, when the defendant refused to pay plaintiff's check, deposits totaling in excess of $85,000.00 were made in said account and checks totaling in excess of $80,000.00 were paid, leaving a balance at the end of the banking day in excess of $45,000.00; that there were sufficient funds on hand to pay the plaintiff's check on said date, but the defendant, its duly authorized servants, agents and employees, improperly and illegally refused, failed and neglected to do so; that on March 8, 1962, checks totaling in excess of $45,000.00 were paid by the defendant. That if the officer of the defendant had not made certain misrepresentations on March 8, 1962, as hereinafter alleged, the plaintiff would have presented said check for payment that day at the defendant bank.

"4. That in the many years of doing business with Floyd Acord, the defendant had never opened a 'collection account,' but on March 6, 1962, the defendant, without the knowledge or consent of its depositor, Floyd Acord, placed in a special account checks payable to Floyd Acord instead of depositing them in his checking account according to its custom and practice for many years; that on said date the defendant was the holder of a note from Floyd Acord in the amount of $15,000.00 which was secured by a chattel mortgage; that the defendant acted in a manner contrary to banking regulations, laws and practices, and protected its own interests instead of carrying on business as it should have in behalf of its depositor, Floyd Acord; that by the opening of said collection account on March 6, 1962, an amount in excess of $45,000.00 was placed in said collection account; that on March 8, 1962, the President of the plaintiff corporation and the President of the Cedar Vale National Bank, Cedar Vale, Kansas, talked by telephone to one of the officers of the defendant bank regarding the check mentioned herein; that the plaintiff believes that said officer was A. M. Molz, cashier of defendant bank; that on said day there was an amount in excess of $25,000.00 in said collection account, but said officer, acting on behalf of and as the agent and employee of the defendant, evaded and refused to answer questions concerning the availability of money to pay said check; that said officer knew of the balance in the checking account and knew of the amount of money in the special collection account, yet he failed and refused to tell the president of the Cedar Vale Bank of the money and refused to accept the check for collection; that said officer informed the president of the Cedar Vale bank that Acord had no money in the bank; that he did not know when the bank

would have any money, and that if the check was sent down for collection, it wouldn't be paid when the money was available; that said officer of the defendant bank knew all the facts and circumstances surrounding Acord and his transactions with the bank and the status of his accounts; that the plaintiff believed the representations of the officer of the defendant bank to be true and relied on them to its detriment as set forth herein; that the false and evasive statements by the representative of the defendant bank were misleading to the plaintiff and because of them the plaintiff did not commence legal proceedings to protect its interests and collect said check; that on March 10, 1962, E. W. Alberding and Floyd Schupbach, d/b/a Kiowa Sales Company, a partnership, filed an action in the District Court of Barber County, Kansas, against Floyd Acord and garnisheed the defendant; that the answer of the defendant bank as garnishee admitted the existence of money in the special collection account and by virtue of said law suit and garnishment, the plaintiff in said case was able to obtain a portion of said funds; that if the said bank officer had followed usual banking customs and practices in advising the plaintiff's banker and the plaintiff's representatives of said collection account and other funds of Floyd Acord on deposit on March 8, 1962, the plaintiff would have been able on March 8, 1962, or on March 9, 1962, to have taken action similar to that of the Kiowa Sales Company and to have received payment in full on said check; that the circumstances in the case indicate that the defendant was protecting and giving preference to the Kiowa Sales Company by its refusal to advise the plaintiff's representative and its banker of the true circumstances. That said case in which Kiowa Sales Company was plaintiff and the circumstances surrounding it, indicate that the defendant obtained a setoff to which it was not entitled in the amount of $11,791.96.

"5. That on or about March 9, 1962, the authorized agents, servants, and employees of the defendant bank refused to give information to stockholders of the plaintiff corporation who requested payment of checks payable to the plaintiff and executed by said Floyd Acord on the defendant bank, or information regarding said checks; that said agents, servants and employees refused to tell said stockholders of the funds in excess of $25,000.00 in a special collection account.

"6. That according to Kansas and Federal banking regulations and the usual custom and practice of banks generally in this state, it is illegal for a bank to hold a check for a period longer than 24 hours without paying the check or protesting it and returning it to the payee; that the defendant on numerous occasions had held checks written by Floyd Acord for several days; that specifically on March 5, 6 and 7, 1962, the defendant held checks for periods longer than 24 hours, and in some cases, checks which were four and five days old, and on March 7, 1962, some of these checks were paid instead of paying the check held by plaintiff; that if the defendant bank had paid or returned said checks which it held in the usual course of banking business within 24 hours of receipt by said bank, instead of holding them for periods longer than 24 hours, there would have been more money in the Floyd Acord checking account on March 7, 1962, than there was shown by the bank's records; that the defendant, its agents, servants and employees, willfully and knowingly engaged in the illegal and

improper practice of 'floating' checks, that is, holding checks for several days drawn by Floyd Acord, until sufficient deposits came into the bank to cover said checks; that the bank also illegally and improperly charged interests on said checks which were held.

"7. That the plaintiff has been able to collect on said check through its own efforts and through a pro rata distribution on a cattlemen's bond the sum of $15,101.12, leaving a balance owing on said check of $9,144.61; that as a result of the actions of the defendant as stated herein the plaintiff has been damaged in the amount of $9,144.61, plus interest from March 7, 1962, at the rate of six percent per annum."

The second cause of action incorporates the pertinent allegations of the first and seeks punitive damages in the sum of $25,000 on the ground that the bank, its agents, servants and employees willfully, knowingly and fraudulently committed the illegal and improper acts as alleged in the first cause of action.

The bank answered charging that the petition was not drawn upon a single and definite theory, and that it did not state facts sufficient to constitute a cause of action. It admitted the existence of the parties and their corporate structure, and specifically denied all other allegations except to the extent that they are admitted in the answer. It then alleged:

"4. Prior to March 1, 1962, Floyd Acord, who was a well-known cattleman in Kansas and Oklahoma, had done business with the defendant for over 15 years; he had built up his cattle business over the years to the extent that in the year preceding March 1, 1962, his deposits and withdrawals were approximately $1,000,000.00 per month, respectively, up until that time, his account always had been satisfactory to the bank; he was engaged principally in trading cattle, that is, buying cattle at one livestock market or community sale, then dividing, classifying and transporting them to another market, where he believed there would be some price advantage, for sale; however, he also had a cow herd, cattle he kept on hand for feeding, trucking equipment and other assets, concerning which the bank had taken his financial statement from time to time, showing a net worth during the above mentioned period in excess of $87,000.00; the defendant had lent Floyd Acord money on his promissory note and chattel mortgage on the cow herd, from time to time, the last renewal of such note and mortgage being in the amount of $15,000.00, executed December 4, 1961, to the Farmers State Bank, Hardtner, Kansas, with interest at 6% per annum, due March 15, 1962, or 'at any time the payee of said note shall deem the said debt unsafe or insecure', the mortgage covering 159 head of cows and 4 bulls, which livestock had been duly inspected by officers of the bank in the Fall of 1962; up until March 1, 1962, the bank had had no reason to question any of the items deposited by Floyd Acord, his word always had been good, and he had met his obligations; from time to time during the year preceding March 1, 1962, checks against the Floyd Acord account would be presented to the bank for payment, and there would not be a

sufficient balance in his account on the date of presentment of the checks for payment, but, on such occasions, Floyd Acord would call the bank, inform the bank and its officers that he had items for deposit that would clear the checks, that he would deposit the checks the next banking day, which he did, and the bank, therefore, was able to clear such checks, according to the usual banking practices, without protesting or returning the same; on such occasions, the bank did not charge Floyd Acord any interst on such checks, but it did charge a service charge in the usual proper and reasonable amount for handling such items. Floyd Acord resided in Alva, Oklahoma, did a considerable amount of traveling in connection with his cattle business, was believed to have substantial net worth, and the bank had no reason to be concerned about his account until on or about March 1, 1962, and for the reasons hereinafter set forth. Neither the bank nor any of its officers, agents or employees at any time had any agreement with Floyd Acord, of any nature whatsoever, that his overdrafts, if any, would be honored and paid.

"4. On March 1, 1962, at the beginning of the business day, Floyd Acord had a balance in his checking account of $150.92; on that date, he made deposits totaling $161,686.47, and checks against his account were presented for payment and paid in the amount of $161,038.35, leaving a balance in his account of $799.04; because of the size of such deposits and withdrawals on that date, and the comparatively small balance remaining, the officers of the bank carefully examined the items deposited and found that a check on A-S Packing Company, which company was owned and operated by Walter Acord, Floyd's brother, who lived at Clearwater, Kansas, in the amount of $40,000.00 was included in the deposits, and a check on Jack Sturgeon, who was an employee of Floyd Acord, in the amount of $25,000.00 was included in such deposits; because of the size of such checks and the close relationship of the makers thereof to Floyd Acord, the officers of the defendant bank were first given reason to doubt the validity of Floyd Acord's banking transactions, questioned whether or not such checks would be paid in the regular course of business, and, on March 2, 1962, called the Haysville, Kansas Bank, on which the A-S Packing Company check was drawn and the Goltry, Oklahoma Bank, on which the Jack Sturgeon check was drawn; both banks assured the defendant that they believed such checks would be paid when presented but could not certify them or wire acceptance, an officer of the Haysville Bank stating that Walter Acord had called him informing him that the check was coming in and that Walter Acord had said that he would have money on deposit by the time it arrived to cover it; officers of the defendant bank, on March 2, 1962, also called other banks on which the more substantial items deposited on March 1, 1962, were drawn and were informed that it was believed that all of such items were good but that acceptance could not be made until the items reached the respective banks; on March 2, 1962, Floyd Acord made additional deposits totaling $8,014.60 and checks were presented for payment against his account totaling $7,615.11, and the defendant bank, after checking with the banks on which the substantial items of deposit were drawn, paid the checks presented against the account, leaving a balance in the account of $1,198.53; on March 3, 1962, Floyd Acord made deposits totaling

$39,946.84, being checks on the Woodward Sales Company, in the amount of $11,718.21 and on the Emporia Sales Company in the amount of $28,228.63, and the officers of the defendant bank checked with the banks on which such items of deposit were drawn and were informed that it was believed such items would be good when presented in the usual course of business; on the same date, March 3, 1962, which was a Saturday, the defendant received a cash letter from the Federal Reserve Bank, Kansas City, Missouri, including checks on the Floyd Acord account of $32,113.20; according to their usual practice, the defendant bank paid the Federal Reserve Bank cash letter after the close of business Saturday noon, March 3rd, with the intention of debiting such checks against the Floyd Acord account on the next banking day, which would be Monday, March 5, 1962, also according to usual banking practices; however, at about the time the bank opened on Monday, March 5th, the defendant received unofficial information that the A-S Packing Company item in the amount of $40,000.00 was being protested and returned; thereupon, officers of the defendant bank again called the Goltry, Oklahoma, and other banks upon which items of deposits were not yet collected, but were unable to obtain any definite assurance that such items would be paid when presented; also, on March 5, 1962, Floyd Acord made additional deposits of $9,588.45, and the defendant bank was unable to obtain any definite assurance that such items would be paid when presented; on March 5, 1962, checks totaling $9,119.34 were presented for payment against the Floyd Acord account and were paid; this left a balance shown on the Floyd Acord statement as of the end of business on March 5, 1962, in the amount of $41,611.92, but the bank, at that time, had definite information that the $40,000.00 item was being protested and returned and had no definite assurance that many other items representing substantial deposits since March 1, 1962, would be paid; the bank already had obligated itself and paid the Floyd Acord checks in the amount of $32,113.20, received on March 3, 1962, but, because of doubt as to the status of the account, such checks were not debited to the account on March 5, 1962, and until there could be some clarification of the status of the account.

"5. On March 6, 1962, Floyd Acord made a deposit of $45,286.96, which deposit the officers of the bank placed in a special collection account until further verification could be made of the items of deposit; the items deposited on March 6, were Home Insurance Company, $248.00; Salina Livestock Company, $11,308.82; and Bruce-Jones Livestock Commission Company, Wichita, Kansas $20,000.00 and $13,730.14; on March 6, 1962, Floyd Acord's checking account showed a balance of $41,611.92, and $45,286.96 had been deposited to his credit, in a special collection account, but, on that same date, the A-S Packing Company check in the amount of $40,000.00 was returned to the defendant bank having been protested by the Haysville Bank on March 5, 1962, and the officers of defendant bank had considerable doubt as to whether numerous other items deposited since March 1, 1962, including the Sturgeon $25,000.00 check, would be paid and could not obtain any definite assurance that many of such items would be paid, and the above mentioned $32,113.20 in checks had not yet been debited to the Floyd Acord account; therefore, on March 6, 1962,

the defendant bank protested and returned the following checks received against the Floyd Acord account:

| PAYEE | AMOUNT |
|---|---|
| Farmers Livestock Commission Co., Enid, Oklahoma | $14,444.00 |
| Harry Buckmaster, Wetherford, Oklahoma | $ 5,313.47 |
| Kiowa Sales Company, Kiowa, Kansas | $30,509.18 |
| Art Sheperd, Helena, Oklahoma | $ 1,329.88 |
| Wichita Livestock Exchange Association, Wichita, Kansas | $ 6,903.00 |

"6. On March 7, 1962, Floyd Acord made a deposit of $40,503.86, consisting of checks and drafts on John Williams and his Fairbury, Nebraska Sale Company and the Bruce-Jones Company of Wichita, which after telephone conversations, the bank believed were satisfactory and collectable, although neither acceptance or the money was wired on the same, and such deposit totaling $45,286.96 credited to the collection account on March 6, 1962, was transferred to the Floyd Acord checking account, the bank believing such amount would be paid, although not yet paid; thereupon, the above mentioned checks amounting to $32,113.20, first received by the bank on March 3, 1962, were charged against the checking account and the returned A-S Packing Company item, totaling $40,001.50, with protest fees, was charged against the account, and the above mentioned deposit of March 5, 1962, in the amount of $9,588.45, not yet having been paid or verified, was transferred to the Floyd Acord account for uncollected funds; therefore, at the close of business, on March 7, 1962, the Floyd Acord checking account showed a balance of $45,699.59, and his uncollected funds account showed a balance of $9,588.45, but both of such balances represented uncollected funds; also, on March 7, 1962, the bank received a telegram from the Goltry Bank that the Jack Sturgeon item was being protested and returned, and, by that time, the officers of the bank believed that Floyd Acord was in considerable financial difficulty, and they were unable to consider any of the funds remaining in the above balances at the close of business on March 7, 1962, as being subject to withdrawal unless and until paid or definite assurance of payment was received; therefore, on March 7, 1962, the bank protested and returned, on account of insufficient funds, the following checks which were received on that date against the Floyd Acord account:

| PAYEE | AMOUNT |
|---|---|
| Carmen, Oklahoma, Livestock Exchange | $ 4,853.73 |
| Pat Mooney, El Reno, Oklahoma | $11,090.00 |
| Emporia Livestock Sales Company | $ 6,933.45 |
| P. A. Gregg, Calumet, Oklahoma | $ 2,400.00 |
| Winfield Livestock Auction, Inc. | $24,245.73 |

"7. On March 8, 1962, payment was made or acceptance received of the items totaling $45,286.96, deposited on March 6, 1962; on that same date,

the defendant bank received additional checks against the Floyd Acord account for payment, in the total amount of $61,533.44, and the bank paid such checks to the extent collected funds on hand were available for payment of the same, the checks being paid totaling $45,696.33, and leaving a balance on hand in the checking account of $3.26; before such checks were paid, the bank also had received a telephone call from the Goltry bank to the effect that even though the Jack Sturgeon $25,000.00 item had been protested and returned on March 7th, funds had been provided for payment of the same on March 8th, and the Goltry Bank was on March 8th mailing a draft direct to the Farmers State Bank in the amount of $25,000.00 in payment of the same; in addition to the checks paid on March 8th by defendant bank, the bank protested and returned the following checks on account of insufficient funds in the Floyd Acord account:

| PAYEE | AMOUNT |
|---|---|
| Don Gorland, Calumet, Oklahoma | $1,500.00 |
| Pat Mooney, El Reno, Oklahoma | $7,472.40 |
| Paugh & Company, Wichita, Kansas | $3,256.44 |
| Salina Livestock Commission Co. | $3,608.27 |

Final deposits were made by Floyd Acord on March 8, 1962, being checks on Giger Sale Company, Emporia, in the amount of $13,550.77, on V. C. Cattle Company in the amount of $192.71, and on American Livestock Company in the amount of $411.21 and $2,191.45; and these checks were deposited on March 8, 1962, in the Floyd Acord uncollected funds account for the reason that defendant bank had no assurance that such amounts would be paid until such checks were presented and paid. The bank, on March 8th, had not yet received payment or notice of acceptance of the items deposited on March 5, 1962, totaling $9,588.45; and such amounts in uncollected funds as of the closing of business on March 8, 1962, totaling $25,933.59, remained in uncollected funds and payment of none of such items of deposit was received by the bank until on or after March 12, 1962.

"8. On March 9, 1962, the only transaction in the Floyd Acord account was the receipt of the protested Jack Sturgeon $25,000.00 check which had been deposited on March 1, 1962, and, at the same time, draft of the Goltry, Oklahoma bank in the amount of $25,000.00 in payment of the same was received, and proper debit and credit was made against the account, leaving a balance in the checking account as of the close of business on March 9, 1962, in the amount of $3.26, the same amount remaining at the close of business on March 8, 1962. On March 9, 1962, the defendant bank received a check against the Floyd Acord account in the amount of $1,600.00, payable to the order of Don Gorland, Calumet, Oklahoma, and it protested and returned such check on account of insufficient funds.

"9. On March 10, 1962, the defendant bank received a check drawn against the Floyd Acord account in the amount of $31,432.91, payable to Perryton, Texas, Livestock Auction Company, and it protested and returned such check on account of insufficient funds. On the afternoon of March 10, 1962, defendant received a garnishment summons in case No. 9070, in the District Court of Barber County, Kansas, E. W. Alberding and Floyd Schupbach d/b/a Kiowa Sales Company, a partnership, plaintiffs, vs. Floyd Acord,

defendant, and Farmers State Bank, Hardtner, Kansas, garnishee. The records of such case are made a part hereof by reference. The balance remaining in the Floyd Acord checking account of $3.26, on that date, together with uncollected funds in the amount of $25,933.59, which were paid on or after March 12, 1962, were subjected to garnishment and were later paid into the Clerk of the District Court of Barber County, Kansas, and paid and distributed in accordance with orders of the court as made and entered in case No. 9070.

"[The records in case No. 9070 in the district court of Barber County, Kansas, show that W. Luke Chapin represented both the plaintiffs, E. W. Alberding and Floyd Schupbach, d/b/a Kiowa Sales Company, a partnership, and the garnishee, Farmers State Bank, Hardtner, Kansas. The answer of the garnishee said it was indebted to Acord, on account of money deposited, either at the time of service of garnishee summons or since time of service on items then in the process of collection, in the total sum of $25,936.85, which amount was on deposit in the bank to the credit of the account of Acord in his checking account at the time of answer. The records in this case further disclose that the indebtedness of Acord to the bank in the sum of $15,252.50, being the amount of the note and interest, was secured by a chattel mortgage on 163 head of cattle valued at $22,500, but that most of the cattle had been sold without the bank's knowledge and it realized only $3,460.54 on the sale of the mortgaged cattle, leaving a balance due on the note and mortgage as of March 15, 1962, in the amount of $11,791.96, which the district court ordered paid to the bank as a preferential claim and offset of said bank, and the balance of the garnished funds on hand in the amount of $14,053.83 paid to the Kiowa Sales Company in partial satisfaction of its judgment entered on the 23rd day of April, 1962.]

"10. Additional checks received against the Floyd Acord account after the garnishment included a check payable to the order of Edgar D. Beecher, Kingfisher, Oklahoma, in the amount of $1,815.00, which was protested and returned on March 12, 1962, and a check payable to the order of Grace Copenhaver, Alva, Oklahoma, in the amount of $1,108.20, which was protested and returned on March 13, 1962.

"11. Included in the Federal Reserve Bank, Kansas City, Missouri, cash letter, received by defendant bank on March 3, 1962, which included checks against the Floyd Acord account in the amount of $32,113.20, which checks were paid by defendant bank on March 3, 1962, and charged to Floyd Acord checking account on March 7, 1962, as above stated, and for the reasons above stated, was a check to this plaintiff, Winfield Livestock Sale Company, Inc., in the amount of $1,476.80.

"12. Further answering, defendant specifically denies that it at any time improperly or illegally refused or failed to pay plaintiff's check or any other check against the Floyd Acord account and defendant further states that it had good reason for protesting and returning plaintiff's check and other checks, for the reasons herein set forth. Defendant further states that, in accordance with G. S. 1949, 52-1706, 'a check itself does not operate as an assignment of any part of the funds to the credit of drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check.'

"13. Further answering, the defendant states that officers of the bank conferred with Floyd Acord on March 5, 1962, and Floyd Acord was informed, and it was agreed by and between the bank and Floyd Acord that, as and from that time, any checks deposited by Floyd Acord which were drawn on other banks, would be deposited for collection only, regardless of whether deposited to his checking or collection account, until accepted by the bank on which drawn or until payment was received by the defendant bank.

"14. Further answering, defendant states that from and after March 5, 1962, it had the legal right to set off against the Floyd Acord account the $40,000.00 A-S Packing Company item and the Floyd Acord checks in the amount of $32,113.20 remitted for by the bank on March 3, 1962, and that from and after March 7, 1962, when notification was received by wire of dishonor of the Jack Sturgeon $25,000.00 item and until payment of the same was received on March 9, 1962, the bank had the right to set off against the Floyd Acord account said $25,000.00 item; and it did so consider such items as setoffs.

"15. Further answering, defendant states that it is not at liberty to disclose the status of any depositor's account to any person other than the depositor, except upon court order; that from March 5, 1962, until March 10, 1962, for reasons above stated in detail, the officers of the bank did not know the exact status of the Floyd Acord account from day to day, did not know whether uncollected funds would be paid, did not know until March 9, 1962, the exact disposition of the Jack Sturgeon $25,000.00 item, but they did know that the bank had protested and returned over $100,000.00 in Floyd Acord checks on March 6th and 7th, and additional checks were protested and returned on the dates following, as above stated. Therefore, the officers of the bank, not wanting to give preference to any creditor of Floyd Acord, and being unable to give the exact status of the Floyd Acord account at any time during the week of March 5th if they had wanted to, did not give representatives of the plaintiff or of the Kiowa Sales Company or of the many other creditors who inquired during that week concerning the status of the Floyd Acord account any exact information on it.

"16. Further answering, defendant states that none of the officers at any time made a false statement concerning the Floyd Acord account; that officers of the bank do not recall that at any time representatives of the plaintiff requested that plaintiff's check be accepted for collection, but that, for reasons hereinbefore set forth, defendant would not have accepted plaintiff's check or any other check against the Floyd Acord account for collection, nor was it under any legal obligation to do so.

"17. That plaintiff's allegation that if it had had full knowledge regarding the uncollected funds on deposit to the credit of Floyd Acord on March 8, 1962, or on March 9, 1962, it would have taken garnishment action prior to the action of Kiowa Sales Company on March 10, 1962, is an allegation as to a situation that is entirely speculative; that defendant did not in any way protest or give preference to the Kiowa Sales Company, nor did it disclose any information to the Kiowa Sales Company that it did not disclose or would not have disclosed to the plaintiff or its representatives. Defendant did not at any time give any representative of Kiowa Sales

Company any information pertaining to the amount of uncollected funds to the credit of Floyd Acord, prior to the filing of the garnishment action on March 10th. That, under the circumstances of this case, regardless of what information was or was not given to plaintiff or any of the other creditors, plaintiff has no legal grounds for recovery from the bank.

"18. That defendant is informed and believes that plaintiff was the first creditor of Floyd Acord to recover anything on its dishonored check, representatives of the plaintiff having on or about March 9, 1962, recovered $10,055.94, from Floyd Acord, which was applied against said check on that date.

"19. Further answering, defendant states that it is not illegal for a bank to hold a check for a period longer than 24 hours without paying the check or protesting and returning it to the payee, but that the bank is deemed to have accepted the check and to be liable for its payment if it does so hold the check for longer than 24 hours; but that defendant did not at any time after March 1, 1962, hold any check on the Floyd Acord account for longer than 24 hours after receipt without either paying it or protesting and returning it.

"20. Defendant specifically denies that it or its officers or employees in any manner engaged in any illegal or improper acts as alleged by the plaintiff and states that it is not liable to plaintiff or any of the creditors of Floyd Acord in any manner whatsoever at this time.

"WHEREFORE, defendant prays that plaintiff take nothing by its petition and that defendant have and recover its costs herein."

A demurrer by the appellant to the cross petition of the bank seeking damages in the amount of $50,000 for libelous statements made in the appellant's petition was sustained and no appeal from such order was taken by the bank.

On the appellant's motion the bank was required to make its answer more definite and certain in several respects. It complied by enumerating the items comprising certain of the deposits alleged, and the amounts and payees of each of the checks presented for payment on March 5, 1962, and of those which comprised the Federal Reserve Bank cash letter dated March 3, 1962. The bank then added the following as a supplement to its answer:

"5. Thermo-Fax Copies of all deposits slips showing deposits to the Floyd Acord Account, or collection account, during the period March 1, 1962, through March 8, 1962, are attached hereto and made a part hereof by reference. Printing on all deposit slips clearly shows that all checks deposited are deposited for collection only."

Each of the deposit slips attached to the supplemental answer contains the following language at the top:

"In receiving items for deposit, or collection, this Bank acts only as depositor's collecting agent, and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent

credits. This Bank will not be liable for default or negligence of its duly selected correspondents nor for losses in transit, and each correspondent so selected shall not be liable except for its own negligence. This Bank or its correspondents may send items, directly or indirectly, to any bank including the payor, and accept its draft or credit as conditional payment in lieu of cash; it may charge back any item at any time before final payment, whether returned or not, also any item drawn on this Bank not good at close of business on day deposited."

The appellant in its reply denied generally the allegations of every new matter and the statements and conclusions inconsistent with its petition, and further replied that certain deposits, as set forth in the answer, were made in the bank on March 5, 6 and 7, 1962, to cover the check payable to the appellant in the amount of $24,245.73 as set forth in the amended petition, for the purpose of placing enough funds in the bank to meet and pay certain checks drawn by Floyd Acord, and particularly the check drawn payable to the appellant. The reply further alleges:

"FURTHER REPLYING, plaintiff states that the cattle sold to Floyd Acord and paid for by said check were resold by said Floyd Acord or his duly authorized representatives, and the deposits from said sales placed and made in the defendant bank; that said funds may be traced from the resale of said cattle to Floyd Acord's account in the defendant bank, which transaction operates as an assignment of said funds for the payment of said check; that said deposits from the resale of cattle purchased from the plaintiff by Floyd Acord or his duly authorized representatives were sufficient to pay the plaintiff's check; that the defendant bank by reason of its long association with Floyd Acord, and pursuant to an implied agreement as indicated by the circumstances and course of dealing between said parties, knew, or should have known, that the proceeds of the sale of cattle sold by the plaintiff to Floyd Acord had been and were deposited in the defendant bank for payment of said check prior to the presentation of the check in question; and that certain deposits as set forth in defendant's answer had been made in the defendant bank prior to the request of the plaintiff and its representatives for information regarding the account of Floyd Acord in the defendant bank; that said transactions operated as an assignment of funds from the Acord account in the defendant bank to the plaintiff.

"WHEREFORE, plaintiff renews its request for relief as stated in its petition."

On the 25th day of April, 1963, a pretrial order was entered which reads in part:

"1. Plaintiff's Exhibit No. 1, being the check involved and the notice of protest in question as sent to plaintiff is admitted in evidence without further identification.

"2. Plaintiff's Exhibit No. 2, consisting of eight photo copies of business records from the Winfield Livestock Auction, Inc., showing the type, number and price of the cattle purchased on March 3, 1962, by the agent

of Floyd Acord and in payment for which the check included in Plaintiff's Exhibit No. 1 was given, is admitted in evidence without further identification but subject to defendant's objection to the relevancy thereof.

"3. It is admitted Floyd Acord is now in bankruptcy.

"4. Defendant agrees to submit to plaintiff photostatic copies of ledger sheets from July 1, 1961, thru March 10, 1962, on the account in question.

"5. It is stipulated that the facts concerning the transactions on the Acord account as stated in the answer and supplemental answer are correct.

"6. Defendant moved for judgment on the pleadings and on the facts admitted including other exhibits which are to be furnished. Ruling on said motion was deferred by the Court until the other exhibits have been furnished by defendant."

The bank argues the stipulation in No. 5 was the basis of the trial court's ruling, and is of controlling significance on appeal. The bank in its brief restates the facts and sets forth what it regards as admissions of the appellant. With the bank's version of such admissions we cannot agree. For example, the bank claims the printing at the top of the deposit slips is admitted by the appellant. This was set forth in the supplemental answer for the first time and denied in the reply.

The appellant directs our attention to the fact that the pretrial order was prepared by the court, not by counsel. The appellant contends the statement in paragraph No. 5 of the pretrial order is too broad and says it should have been that the transactions (checks, deposits, etc.) on the Acord accounts *as shown by the records of the bank* were correct.

In our opinion the stipulation set forth in paragraph No. 5 of the pretrial order is ambiguous, standing alone, but when construed with the entire pretrial order, and the transcript of the pretrial proceedings as it appears in the counter abstract, it indicates an intention to avoid unnecessary proof and simplify the presentation of the evidence at the trial. (See, G. S. 1949, 60-2705.) We shall, therefore, construe the stipulation as an admission or concession by the appellant that the transactions showing the activity on the Acord account as shown by the records of the bank, that is, the bank ledger entries for both the checking account and the collection account, are correct as to the amount and date of entry at times material to this litigation. *(Note:* The ledger sheets for the collection account and the checking account, supplied the appellant by the bank in accordance with the pretrial order, have not been set forth herein because the recital of such entries in the answer and supplemental answer is identical with the ledger sheets.)

The general law applicable when the court is called upon to rule on a motion for judgment on the pleadings has already been stated. A further rule, which now becomes material in view of the various contentions advanced, is that such motion admits the truth of all the well-pleaded facts in the pleadings of the opposing party, and the court in ruling on such a motion is not justified in reaching out and making additional facts a part of the pleadings to which a motion is lodged, and for such determination the pleaded facts of the moving party *not conceded* are to be ignored. *(Dearborn Motors Credit Corporation v. Neel,* 184 Kan. 437, 337 P. 2d 992, Syl. ¶ 2.)

Here the facts in the answer conceded by the appellant were by a stipulation at a pretrial conference, but the situation is governed by the same rules of law that would control had the conceded facts in the answer been made by way of reply and a motion for judgment on the pleadings interposed.

Stated in its simplest form, and stripped of excess verbiage, the appellant herein charges the bank with making false and fraudulent statements to the appellant in a telephone conversation on March 8, 1962, as to the status of Acord's checking account with the bank, after the bank had protested and returned to the appellant a check written by Acord on his account in the amount of $24,245.73. The petition charges that an officer of the bank in a telephone conversation told the appellant that Acord had *no money in the bank on March 8, 1962.* The petition alleged this statement was false, that the bank knew the statement to be false, and that the appellant relied on the statement to its detriment.

The concession or admission of the appellant at the pretrial conference did not vitiate such charge. It disclosed at the close of business on March 7, 1962, the Acord checking account showed a balance of $45,699.59, and his uncollected funds account showed a balance of $9,588.45. Whether these balances represented uncollected funds is immaterial, in view of the activity on the account the following day, March 8, 1962, when payment was made or acceptance received of the items totaling $45,286.96, deposited on March 6, 1962.

On the same day, March 8th, the bank received additional checks against the Acord account for payment in the total amount of $61,533.44, and the bank paid such checks to the extent collected funds on hand were available for payment of the same, the checks

being paid totaling $45,696.33, and leaving a balance on hand in the checking account of $3.26.

The pleadings nowhere indicate what time the telephone call was placed by the appellant's officer to the bank on March 8, 1962, and there is no indication in the pleadings as to the status of Acord's account in the bank when the call was placed. The net balance in the account at the end of the day is not determinative. (The bank in its brief *assumes* it was after the opening of the banking hours *and after* the receipt of $61,533.44 in checks on that day against the Acord account that the phone call was made. Upon this assumption the bank proceeds to argue its case.)

The bank in its answer denies that it made a false statement and the reply denies all the allegations in the answer inconsistent with the petition; thus an issue of fact is presented as to whether the bank made a false statement. (*Smith v. Harris*, 178 Kan. 183, 284 P. 2d 611.)

Both the amended petition and the reply of the appellant are entitled to a liberal construction when examined to determine whether a motion for judgment on the pleadings is proper. (*McKnight v. Building Co.*, 96 Kan. 118, 150 Pac. 542.)

Whether the bank was obligated to make a disclosure relative to Acord's account, under the circumstances here presented, is not a question presented for review, and our opinion should not be construed as passing upon this point. On the record here presented the bank voluntarily made a disclosure, and when it undertook to do so, it was not at liberty to make a false statement.

An action where the payee of two protested checks recovered the amount thereof from a bank upon which they were drawn, based upon false and fraudulent representations made to him by an officer of the bank concerning the financial condition of the maker of such checks, and the failure by such officer to disclose the true financial condition of the maker of the checks, were before this court in *Sparks v. Guaranty State Bank*, 179 Kan. 236, 293 P. 2d 1017 and 182 Kan. 165, 318 P. 2d 1062. The general law relative to false and fraudulent statements made by an officer of the bank in situations of this kind may be found in these opinions and the authorities cited therein.

Whether the bank knowingly made a false statement which was fraudulent and with the intent to deceive the appellant is an issue which remains undetermined by the pleadings. On this point the allegations pertaining to improper banking practices by the bank,

and its participation in the garnishment action through which it came out whole on a $15,000 note and chattel mortgage given by Acord, where the security had been practically dissipated, unknown to the bank, prior to any attempt at collection, become material. The bank denied that it was guilty of improper banking practices and there was a joinder of issues by the reply. Interwoven in these allegations are fact issues, many of which can be disentangled from the pleadings only by the evidence.

Other issues of fact and law suggested by the pleadings, some of which are mentioned by counsel for the parties in their briefs, and not discussed in this opinion, are not determined. To pursue these points would practically require the writing of a treatise on the subject of banking law upon a record which is inadequately briefed. Such undertaking would serve merely as a trial brief for the parties, and is neither necessary nor required for a decision at this point in the proceedings.

The judgment of the lower court is reversed.